STEVEN L. BAKER,                                   :
                                                   :
                      Petitioner,                  :        Civ. No. 14-370 (PGS)
                                                   :
        v.                                         :
                                                   :
UNITED STATES OF AMERICA,                          :        **OPINION**
                                                   :
                      Respondent.                  :
                                                   :

**PETER G. SHERIDAN, U.S.D.J.**

## I.      INTRODUCTION

Petitioner, Steven L. Baker, is a federal prisoner proceeding through counsel with a

motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the

following reasons, the majority of petitioner's § 2255 claims will be denied. However, a few of

his claims necessitate an evidentiary hearing.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Petitioner's convictions arise from three separate armed bank robberies. The first

occurred on September 24, 2009 at the Investors Savings Bank in Lakewood, New Jersey. (*See*

Crim. No. 10-266 ECF 39 at 3). The second occurred at PNC Bank in Brick, New Jersey on

November 9, 2009. (*See id.*) Finally, the third occurred on January 13, 2010 at the First Atlantic

Credit Union in Neptune, New Jersey. (*See id.*)

Petitioner committed these robberies with his cousin, Deshawn Clayton. (*See id.*) The

three robberies followed a similar pattern. Petitioner and Clayton would wear gloves and masks

as they committed the robberies. (*See id.* at 29-30). Clayton would typically jump up on the bank

counter during the robberies. (*See id.* at 41). After completing the robberies, petitioner and Clayton would go to a motel to split the proceeds of their bounty. (*See id.* at 42).

At the time of the third robbery, Bryce Byham - a Neptune police officer, happened to be in the parking lot near the bank. (*See* Crim. No. 10-266 ECF 60 at 66) He noticed two men who appeared suspicious. He took down their vehicle's (a green Cadillac) license plate number. (*See id.* at 69) Byham ultimately drove with an FBI agent to the address where the car was registered. (*See id.* at 70-71). While there, they observed the green Cadillac. (*See id.* at 71) Alvin Hare was in the vehicle and was initially detained.[1] (*See id.* at 72). Thereafter, Clayton returned to the vehicle. (*See id.*) Byham thought he looked familiar to the driver of the car who had left the parking lot earlier. (*See id.* at 72-73). Cash was ultimately found in the Cadillac. (*See id.* at 74). Subsequently, Byham went to the Days Inn in Neptune which was close to the First Atlantic Credit Union. He found that Clayton had rented a room there earlier that morning. (*See id.* at 73).

Upon his arrest, Clayton confessed to the robbery and ultimately identified petitioner as his co-conspirator. (*See* Crim. No. 10-266 ECF 39 at 71-72). Thereafter, petitioner's residence was searched. (*See id.* ECF 60 at 186). Evidence corroborating certain aspects of Clayton's testimony was found during this search such as money transfers that corroborated the reasons petitioner had given to Clayton for wanting to rob the banks. (*See id.* at 186-96).

Petitioner was ultimately charged with three counts of bank robbery by force or violence along with three counts of using a firearm in connection with the three robberies. Petitioner's trial took place in early August, 2010, before now retired District Judge Garrett E. Brown, Jr. A jury convicted petitioner on all counts. He received a sentence of eighty-seven months imprisonment on the armed robbery counts to be served concurrently with one other, along with

---

[1] Hare was ultimately released as not part of the robbery as he had been undergoing medical testing that morning.

fifty-seven years total on the firearms counts. The eighty-seven month and fifty-seven year sentences were to be served consecutively.

Petitioner appealed his judgment of conviction to the United States Court of Appeals for the Third Circuit. On appeal, petitioner asserted several claims; namely: (1) trial court error by excluding testimony regarding other cash deposits petitioner made around the time of the robberies; (2) trial court error in giving an "equally available witness" instruction; (3) trial court error in allowing testimony regarding the mapping of cell tower locations and petitioner's cell phone; and (4) that the sentence was substantively unreasonable. On September 17, 2012, the Third Circuit affirmed petitioner's judgment of conviction. *See United States v. Baker*, 496 F. App'x 201 (3d Cir. 2012). On January 22, 2013, the United States Supreme Court denied petitioner's petition for writ of certiorari. *See Baker v. United States*, 568 U.S. 1148 (2013).

In January, 2014, petitioner filed a motion to vacate, set aside or correct his sentence in this Court pursuant to 28 U.S.C. § 2255. Petitioner raised three claims in his initial filing. Petitioner's first claim raised eight sub-claims of purported ineffective assistance of counsel:

1. Counsel was ineffective for rejecting a plea offer from the government without first conveying the offer to Petitioner.

2. Counsel was ineffective for failing to object to the use of cell phone data for geographical information without the government first obtaining a search warrant.

3. Counsel was ineffective for failing to investigate and or move to suppress De Shawn Clayton's trial testimony on the basis of Prosecutorial misconduct.

4. Counsel failed to request a Franks hearing concerning the issuance of the warrant.

5. Counsel was ineffective for failing to call Agent Gallagher as a defense witness.

6. Counsel was ineffective for failing to object and/or request jury instruction.

7. Counsel was ineffective for failing to appeal insufficiency of the evidence presented at trial to obtain the conviction.

8. Counsel was ineffective in her failure to hire a latent print examiner, and a forensic video analyst, and/or present exculpatory evidence, namely, fingerprints, fabric, footwear, and glove impressions.

(ECF 1 at 4-5). Petitioner's second ground raised in his initial filing was for prosecutorial misconduct. His third ground was for cumulative error.

The government filed a response in opposition to petitioner's § 2255 motion. (*See* ECF 7). Thereafter, petitioner filed a traverse. (*See* ECF 8). Subsequently, petitioner filed a motion to appoint counsel along with a motion to amend his § 2255 motion. (*See* ECF 11 & 13). In the motion to amend, petitioner sought to add claims to this action pursuant to *Johnson v. United States*, 135 S. Ct. 2551 (2015). Ultimately, this Court granted both motions. Giselle R. Pomerleau, Esq., of the Federal Defender's Office was appointed to represent petitioner. (*See* ECF 23).

Thereafter, petitioner, now represented by counsel, filed a supplemental brief in support of his § 2255 motion. (*See* ECF 32). In that supplemental brief, petitioner asserted that trial counsel's inaccurate advice regarding the expected Sentencing Guidelines calculation during plea negotiations led petitioner to go to trial and reject a plea offer of 168-189 months. Additionally, the supplemental brief sought to preserve all arguments concerning the interpretation of 18 U.S.C. §§ 924(c)(1)(A) and 924(c)(1)(C)(I).

The government then filed a response to petitioner's counseled supplemental brief. (*See* ECF 36). Subsequently, petitioner filed a supplemental brief considering the United States Supreme Court decision in *United States v. Davis*, 139 S. Ct. 2319 (2019). In that brief,

petitioner withdrew his *Johnson* claim. The matter is now ripe for adjudication on petitioner's remaining claims.

## III.    LEGAL STANDARD FOR § 2255 MOTION

A motion to vacate, set aside or correct a sentence of a person in federal custody pursuant to 28 U.S.C. § 2255 entitles a prisoner to relief if "the court finds . . . [t]here has been such a denial or infringement of the constitutional rights of the prisoner as to render judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). "In considering a motion to vacate a defendant's sentence, 'the court must accept the truth of the movant's factual allegations unless they are clearly frivolous based on the existing record.'" *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (quoting *Gov't of Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989)) (citing R. Governing § 2255 Cases R. 4(b)). A District Court "is required to hold an evidentiary hearing 'unless the motion and files and records of the case show conclusively that the movant is not entitled to relief.'" *Id.* (quoting *Forte*, 865 F.2d at 62). The Third Circuit has stated that this standard creates a "'reasonably low threshold for habeas petitioners to meet.'" *Id.* (quoting *United States v. McCoy*, 410 F.3d 124, 134 (3d Cir. 2005) (quoting *Phillips v. Woodford*, 267 F.3d 966, 973 (9th Cir. 2001))). Accordingly, this Court abuses its discretion "if it fails to hold an evidentiary hearing when the files and records of the case are inconclusive as to whether the movant is entitled to relief." *Id.* (citing *McCoy*, 410 F.3d at 134).

## IV.    DISCUSSION

Most of petitioner's claims assert that trial counsel was ineffective. The Sixth Amendment guarantees effective assistance of counsel. In *Strickland v. Washington,* 466 U.S. 668 (1984), the Supreme Court articulated the two-prong test for demonstrating when counsel is deemed ineffective. First, the petitioner must show that considering all of the circumstances,

counsel's performance fell below an objective standard of reasonableness. *See id.* at 688; *see also Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013) (noting that it is necessary to analyze an ineffectiveness claim in light of all of the circumstances) (citation omitted). A petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. *See Strickland*, 466 U.S. at 690. Under this first prong of the *Strickland* test, scrutiny of counsel's conduct must be "highly deferential." *See id.* at 689. Indeed, "[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. The reviewing court must make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. If counsel makes "a thorough investigation of law and facts" about his plausible options, the strategic choices he makes accordingly are "virtually unchallengeable." *Gov't of Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1432 (3d Cir. 2006) (citing *Strickland*, 466 U.S. at 690-91). If, on the other hand, counsel pursues a certain strategy after a less than complete investigation, his choices are considered reasonable "to the extent that reasonable professional judgments support the limitations on investigation." *Rolan v. Vaughn*, 445 F.3d 671, 682 (3d Cir. 2006) (citing *Strickland*, 466 U.S. at 690-91).

The second prong of the *Strickland* test requires the petitioner to affirmatively prove prejudice. *See* 466 U.S at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*; *see also McBridge v. Superintendent, SCI Houtzdale*, 687 F.3d 92, 102 n.11 (3d Cir. 2012). "This does not require that counsel's actions more likely than not altered the

outcome, but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011) (internal quotation marks and citations omitted).

"With respect to the sequence of the two prongs, the *Strickland* Court held that 'a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'" *Rainey v. Varner*, 603 F.3d 189, 201 (3d Cir. 2010) (quoting *Strickland*, 466 U.S. at 697). Additionally, "claims of ineffective assistance of appellate counsel are also governed by the *Strickland* standard." *Lusick v. Palakovich*, 270 F. App'x 108, 110 (3d Cir. 2008) (citing *United States v. Mannino*, 212 F.3d 835, 840 (3d Cir. 2000)).

A. Rejecting Plea Offer

In petitioner's first claim, he asserts trial counsel rejected a plea offer from the government without petitioner's consent. More specifically, petitioner states as follows:

> The governments [sic] first plea offer was for the dismissal of the two armed bank robbery charges for a guilty plea to the remaining one count of armed bank robbery charge.

> As a counter offer to the governments [sic] plea offer, defense counsel offered a dismissal of "all" three armed bank robbery charges for a guilty plea of "misdemeanor possession of stolen property."

> The government rejected defense counsel's counter offer of misdemeanor possession of stolen property and instead the government offered "criminal possession of stolen property" in exchange for the dismissal of the "three" armed bank robbery charges.

Counsel rejected the criminal possession of stolen property plea offer because counsel erroneously believed that the petitioner would still be exposed to the same amount of prison time as if the petitioner would have plead [sic] to one count of armed bank robbery, based, upon a failure to investigate petitioner's offense level and criminal history category.

Counsel incorrectly assumed that since petitioner had not, initially, accepted the one count of armed bank robbery plea offer, from the government, that petitioner would have rejected the criminal possession of stolen property plea offer, therefore counsel rejected the government's offer without first consulting with petitioner and without petitioner's consent. . . .

[I]f counsel would have properly investigated the facts and the law, relaying and counseling petitioner on the government's plea offer, petitioner would have accepted the offer and would not have proceeded to trial on the charges.

(ECF 1-2 at 9-10).

The government asserts that it never gave petitioner a second plea offer and that the only plea offer that was given was for petitioner to plead to one bank robbery in exchange for not pursuing charges against him on the two other bank robberies. (*See* ECF 7 at 14; ECF 7-1). Thus, according to the government, because a plea to a lesser charge was never offered to petitioner's trial counsel, counsel could not have been ineffective for rejecting it.

The United States Supreme Court has held that "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *See Missouri v. Frye*, 566 U.S. 134, 145 (2012). "[T]he fact of a formal offer means that its terms and its processing can be documented so that what took place during the negotiation process becomes more clear if some later inquiry turns on the conduct of earlier pretrial negotiations." *Id.* at 146. Accordingly, deficient performance occurs when counsel fails to communicate formal plea offers to the defendant. *See id.* at 146-47. Once that is satisfied, a petitioner still must show prejudice. In *Frye*, the Supreme Court noted that:

> To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law. To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time.

*Frye*, 566 U.S. at 147 (citing *Glover v. United States*, 531 U.S. 198, 203 (2001). As one court has noted:

> A petitioner ... who seeks to establish a claim of ineffective assistance of counsel in the context of plea bargaining, consequently must make a double showing – (1) that the prosecutor extended the plea offer and (2) that his or her attorney either failed to communicate the offer to him or misadvised him concerning the advantages and disadvantages of the offer so as to cause the non-acceptance of an otherwise beneficial outcome by a favorable guilty plea.

*Compean v. United States*, No. 12-0730, 2013 WL 6196517, at *7 (W.D. Ky. Oct. 18, 2013) (citing *Lint v. Prelesnik*, No. 09-10044, 2011 WL 3241840, at *11 (E.D. Mich. July 29, 2011); *Robinson v. United States*, 744 F. Supp. 2d 684, 696 (E.D. Mich. 2010)); *report and recommendation adopted by*, 2013 WL 6196533 (W.D. Ky. Nov. 26, 2013). Thus, whether a defendant is ever offered a formal plea offer is a vital factor in determining whether counsel is deemed to be ineffective because mere informal plea discussions are not enough to trigger counsel's duty to inform. *See Shnewer v. United States*, No. 13-3769, 2016 WL 867461, at *15 (D.N.J. Mar. 7, 2016) (citing *Hull v. United States*, No. 15-0123, 2015 WL 5009998, at *2 (W.D. Wis. Aug. 15, 2015)) ("The Court made clear in *Frye*, that duty applies only when the plea offer is a 'formal one.' The Court has never held that defense counsel can be found constitutionally ineffective for failing to tell their clients about informal discussions they have with the

government about possible plea offers."); *Mavashev v. United States*, No. 11-3724, 2015 WL 1508313, at \*9 (E.D.N.Y. Mar. 31, 2015) (noting that there is a significant distinction between formal plea offers and informal plea offers); *United States v. McCall*, No. 00-0505, 2014 WL 2581353, at \*3 (N.D. Cal. June 9, 2014) ("In reality, there is either a formal plea offer, or in its absence, mere discussions between counsel. Mere conversations are rarely recorded and always subject to interpretation and mis-remembering. It would be a near-impossible burden to require defense counsel to update defendant on each twist and turn in informal conversations. And it would be impossible for the government to reconstruct and prove each such twist and turn in the communication, much less prove that defense counsel passed on the twists and turns to their client.... Therefore, to transmogrify mere conversation into an "informal plea offer" and then to further say it must be communicated to an accused on pain of Section 2255 relief would be a nifty sleight of hand.") (citations omitted); *United States v. Merlino*, Crim. No. 99-10098, 2014 WL 793987, at \*4 (D. Mass. Feb. 28, 2014) ("A majority of courts ... have held that a formal plea offer must consist of something more than preliminary oral communications.") (citations omitted); *Montgomery v. United States*, No. Crim. 07-00036, 2013 WL 6196554, at \*4 (W.D. Ky. Nov. 26, 2013) ("Although there has been little exposition regarding the precise definition of the term "formal offer," the Court clearly intended to distinguish "offers" made during the course of preliminary negotiations from those made once negotiations have concluded. In other words, while there is no touchstone for assessing the formality of an offer, there must at the very least be some basis for concluding that the alleged offer could have been accepted or rejected without further discussion or negotiation."); *Compean*, 2013 WL 6196517, at \*7 ("The threshold issue for the Court therefor is whether the Government ever extended a formal plea offer to the Defendant in the first instance.") (citing *Guerrero v. United States*, 383 F.3d 409, 417 (6th Cir.

2004); *Strollo v. United States*, No. 05-0113, 2007 WL 2071940, at *3 (N.D. Ohio July 16,

2007))).

Courts do tend to look at several factors to determine whether the prosecutor extended a

formal plea offer. Indeed:

> One court has noted that plea agreements "are essentially
> contracts" and that "for a contractual offer to exist, it must contain
> 'sufficiently definite terms to enable [a] fact finder to interpret and
> apply them." *United States v. Petters*, 986 F. Supp. 2d 1077, 1082
> (D. Minn. 2013) (quoting *Neb. Beef, Ltd. v. Wells Fargo Bus.
> Credit, Inc.*, 470 F.3d 1249, 1251 (8th Cir. 2006)). Thus, in
> *Petters*, the District of Minnesota determined that a formal plea
> offer had not been extended because there was "an absence of any
> discussion of the charges to which Petters would acknowledge
> guilt, the factual basis for a plea, or restitution or forfeiture issues."
> *Id.* A court in this Circuit has similarly stated that, "it is clear that
> an oral discussion of the sentencing range for a possible plea
> agreement that does not include an agreement on the charges to
> which the defendant will plead guilty and the facts that he will
> admit, does not constitute a formal plea offer." *Waters*, 2013 WL
> 3949092, at *8 (citing *Enright v. United States*, 347 F. Supp. 2d
> 159, 165 (D.N.J. 2004)).

*Shnewer*, 2016 WL 867461, at *16. In *Shnewer*, Judge Kugler determined that the petitioner

failed to show that a formal plea offer had been made because of a lack of a discussion regarding

the charges to which the defendant would have pled guilty to along with a factual basis for the

plea. *See id.* Furthermore, Judge Kugler noted that petitioner failed to show that the prosecutor

had the authority to bind the government. *See id.*

In this case, and unlike *Shnewer*, petitioner does indicate the charge to which he would

have pled guilty to, namely criminal possession of stolen property in exchange for the dismissal

of the three-armed bank robbery charges. While the government indicates in its brief that this

assertion is false, they provide no declaration/affidavit from the prosecutor and/or from

petitioner's trial counsel to support this argument. Accordingly, this Court finds the record on

this claim at present is inconclusive. Thus, an evidentiary hearing will be necessary to resolve this claim.[2]

B. Cell Phone Data Without Search Warrant

Petitioner next asserts that "the government presented cell tower data gathered from petitioner's cell phone's 'outgoing' and 'incoming' phone calls, without first obtaining a search warrant[.]" (ECF 1-2 at 22). Respondent filed its response to this claim in 2014. Relying on *In re Application of United States for an order Directing Provider of Electronic Communication service to Disclose Records to the Government*, 620 F.3d 304 (3d Cir. 2010), *abrogated by Carpenter v. United States*, 138 S. Ct. 2206 (2018), respondent argues that a warrant was not required to obtain petitioner's historical cell tower data for his cell phone. Respondent claims all that was required was an order from a Judge pursuant to the Stored Communication Act, 18 U.S.C. 2703(d), which was done in this case.

"[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690. It is "only in a rare case" where counsel may be deemed deficient for failing to make an [argument] which could not be sustained on the basis of the existing law as there is no general duty on the part of defense counsel to anticipate changes in the law." *United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005).

As the above citation indicates, *In re Application* was abrogated by the Supreme Court in *Carpenter*. Indeed, *Carpenter* held that acquisition of such cell phone records constitutes a

---

[2] Petitioner's counseled supplemental brief may be attempting to concede that the government only offered petitioner one plea. (*See* ECF 32 at 11) ('This offer was the one and only plea offered by the government in this case.")). However, given petitioner's contradictory statements in his initial § 2255 filings, and out of an abundance of caution, this Court finds an evidentiary hearing is warranted to resolve this apparent dispute within petitioner's own *pro se* and counseled filings.

search such that the government must generally obtain a warrant supported by probable cause before acquiring such records. *See* 138 S. Ct. at 2221. While a warrant for petitioner's cell records was not obtained in this case, this does not necessarily mean that petitioner is entitled to relief on his claim that counsel should have objected to this evidence being introduced at trial.

*Carpenter* was decided almost eight years after petitioner's trial. Furthermore, only one month after petitioner's trial, the Third Circuit decided *In re Application*. Petitioner's counsel cannot be deemed ineffective for failing to predict that the Supreme Court would eventually determine that acquiring such cell phone data normally required a warrant eight years after petitioner's trial. Furthermore, only one month after petitioner's trial, the Third Circuit held just the opposite of *Carpenter*. Thus, petitioner's counsel's performance did not fall below an objective standard of reasonableness as she cannot be deemed ineffective for failing to predict *Carpenter* eight years after the fact.

Notwithstanding petitioner's failure to satisfy prong one of *Strickland*, he has also failed to show prejudice. "When defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

This is not a case where the evidence against petitioner was weak absent the cell phone records. Petitioner was out of work each day of the robberies. (*See* Crim. No. 10-266 ECF 58 at 49, 50, 53-54). Additionally, and most importantly, Clayton testified at length at petitioner's trial and expressly implicated petitioner in the crimes. Clayton's testimony was corroborated in several respects. By way of example only, Clayton's description of the robbery such as them

wearing masks and gloves as well as him jumping up on the counter was corroborated by witness testimony at trial. (*See* Crim. No. 10-266 ECF 54 at 6; ECF 56 at 6-7). Additionally, the reasons Clayton gave for why petitioner wanted to rob the banks were corroborated in several respects. Clayton testified that petitioner wanted to rob the first bank because he was behind on his mortgage and credit card payments. (*See id.* ECF 39 at 25-26). After the first robbery, petitioner made mortgage payments. (*See, e.g., id.* ECF 60 at 191). Additionally, petitioner told Clayton before the third robbery that he needed money for his lawyer. (*See id.* ECF 39 at 50). Subsequently, after the third robbery, petitioner paid his lawyer in cash. (*See id.* ECF 58 at 36). Accordingly, based on all the other evidence implicating petitioner at trial, petitioner failed to show to a reasonable probability that the verdict would have been different had the cell phone evidence against him been excluded. Accordingly, petitioner is not entitled to relief on this claim.

C. <u>Failure to move to suppress Clayton's testimony based on prosecutorial misconduct</u>

Petitioner next alleges that counsel was ineffective for failing to move to suppress Clayton's testimony based on prosecutorial misconduct. Petitioner states that Clayton's agreement with the government to testify against him stated that if he committed another crime while under the agreement, the agreement was null and void. (*See* ECF 1-2 at 25). Petitioner states that Clayton tried to extort money from petitioner during the initial criminal proceedings in exchange for an affidavit that would declare petitioner's innocence. (*See id.*) Clayton ultimately pled guilty to Obstruction of Official Proceedings. (*See* Crim. No. 10-518). However, according to petitioner, Clayton's agreement with the government "was not null and voided in order that the government could compel Clayton to testify even after the government discovered Clayton was a liar and inconsistencies in Clayton's confession." (*See* ECF 1-2 at 25). Petitioner also

asserts that counsel failed to petition the court to have the Assistant United States Attorney ("AUSA") removed from the criminal proceedings considering Clayton's violating his agreement with the government. (*See id.* at 26).

Petitioner fails to show that he is entitled to relief on this claim. First, this Court is not aware, nor has petitioner indicated any case on point that would have led counsel to move to suppress Clayton's testimony based on his attempt to extort petitioner. Clayton's attempt to extort petitioner was addressed and discussed by questions posed to him by both the government and petitioner's trial counsel during Clayton's testimony. (*See* Crim. No. 10-266 ECF 39 at 9-14; Crim. No. 10-266 ECF 41 at 96-102). This presumably acted to challenge Clayton's credibility with the jury. Petitioner fails to show that counsel's actions fell below an objective standard of reasonableness and/or that he was prejudiced by counsel's failure to move to suppress Clayton's testimony.

Petitioner also appears to be asserting some type of ineffective assistance of counsel claim against his trial attorney by alleging that AUSA Bartle told Clayton that he would still get his agreement with the government if he lied on the stand at petitioner's trial. In petitioner's reply brief, he specifically cites to a portion of Clayton's cross-examination at his trial. The portion cited by petitioner went as follows:

> THE COURT: The question is if you were lying, what effect
> would that have any agreement you have with the Government?
> THE WITNESS: It wouldn't have no – no effect. I'm still going to
> get the deal.
> Q: And does Mr. Bartle know that?
> A: Yes, he does.
> Q: Did he – is he the one who told you that?
> A: Correct.

(Crim. No. 10-266 ECF 41 at 19). However, for context, it is important to illustrate Clayton's full testimony. During cross-examination, the following colloquy took place:

Q: . . . And you do realize you're under oath?
A: Correct.
Q: And if you lie under oath you lose your deal, right?
A: No, I don't.
Q: Okay. So it's your belief as you sit here on this witness stand, if you lie under oath you're still going to get your deal?
A: No.
Q: I'm sorry?
A: I'm just here to tell the truth.
Q: The question is regarding your deal. If you lie to this fine jury you're still going to get your deal?
A: I'm not lying.
Q: But –
THE COURT: Pardon?
THE WITNESS: I said I'm not lying.
THE COURT: Okay. It was –
BY MS. LORD: Q: The question is regarding your state of mind sir. Do you believe you –
THE COURT: The question is if you were lying, what effect would that have any agreement you have with the Government?
THE WITNESS: It wouldn't have no – no effect. I'm still going to get the deal.
Q: And does Mr. Bartle know that?
A: Yes, he does.
Q: Did he – is he the one who told you that?
A: Correct.
Q: So Mr. Bartle over here at counsel table told you that if you lie under oath you're still going to get your deal?
A: He never mentioned – just he never mentioned a lie.
Q: What did he mention?
A: Just tell the truth about the case.
Q: Well, you just said two seconds ago, sir, that it's okay – you were told that if you lie under oath you're still going to get your deal, right?
A: Correct.
Q: Didn't you just tell this jury that?
A: Correct.
Q: Okay. And you told us that Mr. Bartle told you that, right?
A: Correct.

(*Id.* at 18-20). During redirect of Clayton, the following took place:

Q: Now, Mr. Clayton, you testified that you met with me and Special Agent Gallagher prior to today, is that right?
A: Correct.

> Q: During those meetings, did anybody from the Government tell you to do anything besides tell the truth today?
>
> A: Correct.
>
> Q: Is that correct?
>
> A: Yes, it is.
>
> Q: And you did lie to the Government, is that right?
>
> MS. LORD: Judge, I'm going to object to the leading question. It is direct examination.
>
> THE COURT: Well, you can lead to focus, but once you get into that area, please don't lead.
>
> MR. BARTLE. Thank you, Your Honor.
>
> BY MR. BARTLE: Q: And during that – during those interviews did you lie to the Government about sending a letter to Steven Baker?
>
> A: Yes, I did.
>
> Q: And what happened after the Government found out that you lied about sending that letter?
>
> A: They charged me with it.
>
> Q: Do you know what you're looking at for that charge?
>
> A: Yes, sir, yes.
>
> Q: What's the max you're looking at for that charge?
>
> A: Twenty years.
>
> Q: And there's no cooperation agreement with regard to that charge, right?
>
> A: No.

(*Id.* at 121-22).

Taken in context, Clayton's testimony indicates that he lied to the government initially prior to trial about attempting to extort petitioner. However, he also testified that he was telling the truth and was told to do so by the AUSA at trial. This Court fails to see how petitioner's counsel's performance fell below an objective standard of reasonableness or how the outcome of petitioner's proceeding would have been different had counsel so objected to a reasonable probability. Accordingly, petitioner is not entitled to relief on this claim.

D. Failure to request *Franks* hearing

In petitioner's next claim, he asserts that his trial counsel was ineffective by failing to request a *Franks*[3] hearing. Prior to petitioner's trial, he states that a government informant was placed in his jail cell and gathered information against petitioner. This informant purportedly rummaged through petitioner's papers, including his legal correspondence. This informant then purportedly contacted the F.B.I. and told the government that Clayton had written petitioner an extortion letter where Clayton demanded $10,000 in exchange for an affidavit detailing petitioner's innocence in the bank robberies. According to petitioner:

> The government questioned Clayton concerning this extortion letter which Clayton adamantly denied writing or sending. The government needed to develop a factual basis concerning the reliability of their key witness. A[t] this time the government did "not" have possession of this letter to confront Clayton.

> The government procured a search warrant for petitioner's jail cell under the guise of an "unrelated investigation," removing client/attorney privileged documents relating to the armed bank robbery charges petitioner was proceeding to trial on, thereby the government gained a "windows look" into petitioner's defense strategies.

> After the government could not find this extortion letter, during the execution of the search warrant, the government then subpoenaed petitioner and threatened his lawyer the same to turn over the extortion letter.

> Petitioner's attorney requested an emergency meeting with District Judge Brown requesting that the government give back client/attorney privileged documents, specifically a legal pad clearly marked client/attorney privileged.

> The government denied taking this notepad or any client/attorney privileged documents until a Monmouth County internal affairs officer who was present during the execution of the search warrant, gave [a] statement that he observed Federal Agents remove this notepad, then did the government remember having this notepad in their possession.

---

[3] *Franks v. Delaware*, 438 U.S. 154 (1978).

Judge Brown ordered the government to return all client/attorney privileged documents without the government copying, reproducing or reprinting the contents in any manner. The government returned said materials.

The problem is that counsel failed to petition the Courts for a Franks Hearing to establish that the warrants did "not" satisfy the so-called "necessity requirement" under 18 U.S.C. 2518(c)(3), by questioning the credibility of the affidavit submitted in support of the warrant.

(ECF 1-2 at 33-34).

As courts have noted:

The Fourth Amendment provides that "no Warrants shall issue but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. In *Franks*, the Supreme Court held that a defendant has a right to challenge the veracity of statements made in an affidavit of probable cause that supported the issuance of a warrant. *See Franks*, 438 U.S. at 167–71, 98 S. Ct. 2674. In order to obtain a hearing to do so, the defendant must first make "a substantial preliminary showing" that the affidavit contained a false statement or omission that (1) was made knowingly and intentionally, or with reckless disregard for the truth, and (2) was material to the finding of probable cause. *Franks*, 438 U.S. at 155–56, 98 S. Ct. 2674; *see also United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006).

*United States v. Aviles*, 938 F.3d 503, 508 (3d Cir. 2019). Furthermore:

in order to obtain a [*Franks*] hearing, a defendant may not rely on only a bare assertion that the affidavit contained false statements that were made knowingly or with reckless disregard for the truth. Instead, he or she must make an offer of proof to support these allegations with "affidavits or sworn or otherwise reliable statements of witnesses," or satisfactorily explain their absence. *Franks*, 438 U.S. at 171.

*United States v. Alamo*, No. 09-1665, 2018 WL 3393286, at *8 (E.D. Pa. July 11, 2018); *see also*

*United States v. Braddy*, 722 F. App'x 231, 236 (3d Cir. 2017).

In this case, petitioner fails to come forward with an offer of proof to support his bare

allegations that the affidavit supporting the search warrant contained false statements that were

made knowingly or with reckless disregard for the truth. He submits no affidavits or otherwise reliable statements from witnesses or satisfactorily explains their absence. Therefore, as petitioner fails to show that he was entitled to a *Franks* hearing, counsel was not ineffective for failing to request one. *Accord Alamo*, 2018 WL 3393286, at \*8. Thus, he is not entitled to relief on this claim.

E. Failure to call Gallagher as a witness

Petitioner next claims that his counsel was ineffective by failing to properly subpoena and call Agent Gallagher as a witness. Petitioner asserts that Gallagher's testimony could have challenged the veracity of Clayton's testimony as well as exposed police failures to investigate third party culpability.

In *Duncan v. Morton*, 256 F.3d 189, 202, (3d Cir. 2001), the Third Circuit found that a habeas petitioner's failure to present any sworn testimony by the witnesses the habeas petitioner claimed counsel should have investigated and called as a witness amounted to a failure to establish *Strickland* prejudice. *See id.* ("In light of Duncan's failure to present any sworn testimony *by Sherman*, he has failed to establish prejudice as a result of [counsel's] failure to interview Sherman.") (emphasis added). In the § 2255 context, other courts have similarly found that a petitioner needs to provide a sworn statement of fact from the proposed witness regarding what they would have testified to if a § 2255 petitioner is to establish *Strickland* prejudice. *See Huggins v. United States*, 69 F. Supp. 3d 430, 446 (D. Del. 2014) (noting that movant did not provide an affidavit from the witness stating that he would have been available to testify and or describing his potential testimony); *Karamos v. United States*, No. 04-0171, 2005 WL 2777552, at \*4 (D.N.J. Oct. 24, 2005) ("[T]he Court cannot conclude that Petitioner was prejudiced by counsel's failure to investigate or call these individuals as witnesses because Petitioner has failed

to provide a sworn statement of facts from any of the seventeen detailing their proposed testimony.").

In this case, petitioner's statements regarding what Gallagher would have testified to are conclusory. Petitioner fails to include any type of sworn statement from Gallagher regarding what his testimony would have been at trial had he been properly called. Accordingly, petitioner has failed to establish prejudice such that this claim is denied.

F.  Failure to object/request jury instruction

Petitioner's next claim is that counsel was ineffective in failing to object/request a jury instruction. As petitioner makes clear in his reply brief, his claim is that:

> Counsel failed to request or move the Courts for third party evidence instructions to the jury and/or object to the language which the District Judge instructed the jury not to "speculate" whether a person may be involved alone or with other's when the crux of petitioner's defense centered around third party culpability.

(ECF 8 at 26).

"[A]n error in the instructions to the jury" may support habeas relief if it rises to the level of a denial of due process. *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). "The question [during habeas review] is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violate[d] due process." *Id.* (citation and internal quotation marks omitted); *accord Waddington v. Sarausad*, 555 U.S. 179, 191 (2009). The challenged instruction "may not be judged in artificial isolation," but must be viewed in the context of the overall charge and the trial record. *Cupp v. Naughton*, 414 U.S. 141, 146 (1973). In considering jury instructions, "an omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of law." *Kibbe*, 431 U.S. at 155.

Petitioner first argues that trial counsel was ineffective for failing to request a third-party culpability instruction. However, this Court finds that petitioner fails to show that he was prejudiced by counsel's purported failure to request this instruction. During trial, Judge Brown instructed the jury as follows:

> The defendant is presumed to be innocent. He started the trial with a clean slate, with no evidence against him. The presumption of innocence stays with the defendant, unless, or until the government has presented evidence that overcomes the presumption by convincing you the defendant is guilty of the offenses charged beyond a reasonable doubt. Presumption of innocence requires that you find the defendant not guilty, unless you're satisfied the government has proved guilty beyond a reasonable doubt. The presumption of innocence means that defendant has no burden or obligation to present any evidence at all, or to prove that he is not guilty. The burden or obligation of proof is on the government to prove the defendant guilty. This burden stays with the government throughout the trial. In order for you to find the defendant guilty of the offenses charged, the government must convince you that he is guilty beyond a reasonable doubt. That means the government must prove each and every element of the offenses charged beyond a reasonable doubt. The defendant may not be convicted on suspicion or conjecture, but only on evidence proving guilty beyond a reasonable doubt.

> Proof beyond a reasonable doubt does not mean proof beyond all doubt . . . . Possible doubts or doubts based on conjecture, speculation or hunch, are not reasonable doubts. A reasonable doubt is fair doubt based on reason, logic, common sense and experience. It's doubt that an ordinary, reasonable person has after carefully weighing all the evidence and is a doubt of the sort that would cause him or her to hesitate and act in matters of importance of his or her own life. They arise from the evidence or from the nature of the evidence.

> If, having now heard all the evidence, you're convinced the government proved each and every element of the offense charged beyond a reasonable doubt, you should return a verdict of guilty for that offense. However, if you have a reasonable doubt about one or more of the elements of the offense charged, then you must return a verdict of not guilty on that offense.

(*See* Crim. No. 10-266 ECF 65 at 20-22). Petitioner does not challenge nor does this Court find fault with Judge Brown's instructions to the jury as it relates the concepts of presumption of innocence, the government's burden of proof or the concept of reasonable doubt. Presumably, had the jury believed that petitioner was not involved in the armed bank robberies, it would have acquitted petitioner based on Judge Brown's instructions of the presumption of innocence, the government's burden of proof and reasonable doubt. Thus, this Court finds that petitioner fails to show that he is entitled to relief on his claim that counsel's failed to request a thirty-party culpability/evidence charge to the jury. *Cf. Hung Le v. Spearman*, No. 16-2302, 2018 WL 2018 WL 2316816, at *8 (S.D. Cal. May 21, 2018) (noting where jury was properly instructed on presumption of innocence, government's burden of proof and reasonable doubt, petitioner fails to show that he was prejudiced based on counsel's failure to request thirty-party culpability instruction because if jury believed another individual committed the shooting, it presumably would have acquitted petitioner).

Petitioner also challenges one portion of Judge Brown's jury instructions. During trial, Judge Brown instructed the jury in part as follows:

> You're not to speculate as to the reason why a person or persons whom you may believe was or were also engaged in criminal activity was or not accused or were not defendants in this trial. Whether a person may be involved alone or with others, alleged criminal conduct could have been, or should have been, indicated is a matter within the sole discretion of others, not yourselves. These matters are wholly outside your concern, and have no bearing on your function as jurors.

(Crim. No. 10-266 ECF 64 at 20). This Court finds nothing improper about this instruction that would have warranted an objection from petitioner's trial counsel. Indeed, even the Third Circuit Model Jury Instructions note that "[p]ossible doubts or doubts based on conjecture or speculation are not reasonable doubts." Third Cir. Model Jury Ins. § 1.13. The model instructions also note

that a decision on one defendant should not influence a decision on another defendant, each needs to be considered individually. *See id.* § 3.13. Accordingly, petitioner fails to show that he is entitled to relief on the arguments he makes in this claim.

G. Failure to appeal insufficiency of the evidence

Petitioner next argues that counsel was ineffective on appeal by failing to raise an insufficiency of the evidence claim. According to petitioner, the evidence did not support guilty verdicts on the armed robbery charges.

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime for with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). There is sufficient evidence to support a conviction, if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). A petitioner raising an insufficiency of the evidence claim faces a "'very heavy burden' to overturn the jury's verdict for insufficiency of the evidence." *United States v. Root*, 585 F.3d 145, 157 (3d Cir. 2009) (citing *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998)). In analyzing a sufficiency of the evidence claim, a court examines both the direct and circumstantial evidence in their totality. *See United States v. Pavulak*, 700 F.3d 651, 668 (3d Cir. 2012) (citations omitted). "[F]ederal courts must look to state law for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (citation omitted). The credibility of witnesses, the resolution of conflicts of evidence, and the drawing of reasonable inferences

from proven facts all fall within the exclusive province of the factfinder and, therefore, are beyond the scope of federal habeas sufficiency review. *See Jackson*, 443 U.S. at 319.

Petitioner fails to show that he is entitled to relief on this claim. Indeed, Clayton's testimony directly implicated petitioner in the crimes. Other circumstantial evidence also supported petitioner's convictions such as, but not limited to, his absence from work and his identification that was used to check into a motel after the first robbery, as previously noted by the Third Circuit on direct appeal (albeit discussing a different claim). *See Baker*, 496 F. App'x at 203. Accordingly, petitioner fails to show that he was prejudiced even if counsel had raised an insufficiency of the evidence claim on direct appeal.

H. <u>Failure to hire latent print examiner, forensic analyst or present fingerprint, fabric, footwear and glove impression evidence</u>

Next, petitioner asserts that his counsel was ineffective because she failed to hire a latent fingerprint examiner and/or a forensic analyst. Additionally, petitioner argues that she was ineffective because she failed to present fingerprint, fabric, footwear and glove impression evidence.

Petitioner argues that counsel's failure to hire an expert impacted both case strategy and the outcome because the prosecution presented its own expert – Detective Dugan, who testified about evidence from the first robbery. Detective Dugan worked for the Ocean County Sheriff's Department. According to petitioner, he argues that there was a dispute at trial between petitioner's counsel on cross-examination about the description of the vehicle on video obtained by Dugan from a local restaurant to the first robbery. According to petitioner:

> There was a dispute between counsel and Detective Dugan about the depiction of the vehicle. Counsel ascertained, through cross-examination that the vehicle depicted was "silver" and was actually a SUV (Sport Utility Vehicle) and "not" a minivan, that

> the make of the vehicle depicted in the video was a Dodge and
> "not" a Ford.
>
> Detective Dugan maintained the vehicle was green and that the
> manner in how the video was froze, with the sun shining on it,
> changed the vehicle's color.

(ECF 1-2 at 16). Petitioner asserts that counsel's difficulty in impeaching Dugan's testimony was

a result of her failure to hire a video analyst. Petitioner comes forward with no evidence such as

an affidavit/declaration from a video expert regarding the testimony he claims the expert would

have testified too as it relates to the vehicle. As such, his claim that counsel should have hired a

video expert to contradict Dugan's testimony fails to satisfy the *Strickland* standard such that

petitioner is not entitled to relief on this claim.

Within this claim, petitioner also argues that counsel should have hired a latent print

analysis expert to test fabric, footwear and glove impressions that the government failed to test.

Once again however, petitioner fails to come forward with any evidence in the form of an

affidavit from a witness on what any hired expert would have testified to with respect to these

pieces of evidence. Thus, he fails to meet the *Strickland* threshold to warrant relief.

Finally, petitioner states that counsel should have hired a fingerprint expert because:

> Clayton alleged petitioner helped him count the money found in
> the trunk of his car after the armed robbery of a bank. The
> government has the fingerprint analysis of that money, yet they
> have not done any comparative analysis to Alvin Hare, Clarence or
> any other potential suspects.

Like petitioner's other claims, he fails to show that he is entitled to relief as he has not

come forward with any supporting evidence from an expert to support his claim about what said

expert would have testified to and/or how it would have affected the outcome of his trial to a

reasonable probability given the strong evidence against petitioner produced at trial as previously

described. Thus, he fails to show that he is entitled to relief on all his arguments within this claim.

I. Prosecutorial Misconduct

1. *Search Warrant/Use of Extortion Letter*

Petitioner next argues that the government engaged in prosecutorial misconduct when it used an informant, T.S., to gather information related to petitioner's trial strategies by confiscating attorney/client privileged documents. (*See* ECF 1-2 at 46). More specifically, he alleges that the informant led the government to procure a search warrant of his prison cell. This led the government to eventually procure possession of an extortion letter from Clayton to petitioner whereby he demanded $10,000 from petitioner in exchange for authoring an affidavit that detailed petitioner's innocence. Petitioner complains that the government eventually used its possession of the extortion letter to soften the blow to their key witness, Clayton, who wrote the extortion letter. (*See id.*)

A criminal defendant's due process rights are violated if prosecutorial misconduct renders a trial fundamentally unfair. *See Darden v. Waingright*, 477 U.S. 168, 182–83 (1986). A habeas petition will be granted for prosecutorial misconduct only when the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* at 181 (internal quotation marks and citation omitted). A prosecutorial misconduct claim is examined in "light of the record as a whole" in order to determine whether the conduct "had a substantial and injurious effect or influence" on the jury's verdict. *See Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993). A "reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the

curative instructions, and the quantum of evidence against the defendant." *Moore v. Morton*, 255 F.3d 95, 107 (3d Cir. 2001).

Petitioner's prosecutorial misconduct claim as alleged in his § 2255 filing appears to be two-fold. First, petitioner complains about the search warrant of his cell as "baseless." Second, he complains about the government's use of the extortion letter at trial.

With respect to petitioner's first argument, this Court already determined that petitioner's allegations that the search warrant was procured pursuant to a baseless affidavit were conclusory and lacked enough merit to warrant granting a *Franks* hearing. It follows that petitioner's argument that the prosecutor committed misconduct by procuring a search warrant of his cell is also conclusory and without sufficient factual support such as through an offer of proof such as through witness affidavits that the search warrant was procured unconstitutionally.

Furthermore, with respect to petitioner's second argument, he fails to show that the use by the prosecutor of Clayton's purported extortion attempt of him as opposed to petitioner's own use of the extortion letter at trial to impeach Clayton's credibility had a substantial and injurious effect on the jury's verdict. Indeed, as previously described, the evidence against petitioner in this case was strong. It included Clayton's testimony directly implicated petitioner in the crimes for which he was charged. Furthermore, Clayton's testimony was supported by other circumstantial evidence that implicated petitioner. As such, this Court fails to see how petitioner is entitled to relief based on the government's use, rather than petitioner's own use of the extortion affidavit at trial, warrants granting him relief. Thus, this claim is denied.

2. *Currying Favor with Clayton*

Petitioner also claims that the government curried favor with Clayton which amounted to prosecutorial misconduct. He claims that the Clayton's agreement with the government was

violated when he attempted to extort petitioner. Thus, according to petitioner, Clayton's agreement with the government became void. Furthermore, petitioner asserts that Clayton testified at his trial that the government told him he would get his agreement whether he lied or told the truth on the witness stand.

With respect to petitioner's second argument, this Court already discussed that this testimony was expressly discussed, brought into focus, and rejected by Clayton on redirect. Thus, there was no prosecutorial misconduct. As to the first argument, petitioner pled guilty to the additional charge of obstruction of official proceedings in light of his attempted extortion of petitioner. Thus, this Court fails to see how this amounted to prosecutorial misconduct. Accordingly, none of petitioner's prosecutorial misconduct arguments warrant an evidentiary hearing, let alone relief.

J.  Ineffective Assistance of Counsel Claim in Supplemental Brief

In petitioner's counseled supplemental brief, he claims that trial counsel gave petitioner inaccurate legal advice regarding the expected Sentencing Guidelines calculation during plea negotiations.[4] According to petitioner as stated in his supplemental brief:

> Trial counsel brought the plea offer of February 17, 2010 to Mr. Baker. However, when advising him as to his sentencing exposure pursuant to this plea agreement, she erroneously calculated his Criminal History Category as Category IV, when in fact it should have been a Category III, or did not calculate it at all (the record is not clear without the testimony of Ms. Lord, though the error is clear based upon the current record). The error was the result of misidentifying the date at which Mr. Baker's parole has maxed out on a prior parole violation stemming from a conviction he received when he was 18 years old. Mr. Baker's total Guideline Level was 27 under the terms of the Plea Agreement. Thus, Mr. Baker believed that he was looking at a Guideline Range of 100 to 125

---

[4] Petitioner's supplemental brief also raised a claim pursuant to *Johnson v. United States*, 135 S. Ct. 2551 (2015). However, on July 2, 2019, petitioner withdrew this claim. (*See* ECF 41). Therefore, no discussion is warranted on this now withdrawn claim.

months for the bank robbery count, instead of the 87 to 108- month range he was actually facing.

(ECF 32 at 12). According to petitioner, the mistake with respect to his criminal history category appeared in his pre-sentence report ("PSR"). (*See id.*). However, petitioner ultimately reported the mistake to his trial counsel upon reviewing the PSR prior to sentencing. As indicated above, he ultimately received a sentence of 87 months on the armed robbery convictions. Petitioner though indicates that had his counsel given him the proper guideline range during the plea negotiation process, he was would have accepted the plea deal offered by the government. (*See id.* at 19).

1. *Relation Back*

Before reaching the merits of this claim, the government argues that the claim is time-barred because it was raised in petitioner's April, 2017 supplemental brief and does not relate back to petitioner's initial § 2255 filing from 2014. As noted by the Third Circuit:

> Pursuant to Rule 15(c), an amendment that is otherwise untimely "relates back to the date of the original pleading when ... the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). The Supreme Court has cautioned that courts should not interpret "conduct, transaction, or occurrence" in such a broad manner so as to construe essentially all amendments as permissible under the relation-back doctrine. *See Mayle v. Felix*, 545 U.S. 644, 656–57, 125 S. Ct. 2562, 162 L. Ed. 2d 582 (2005). For example, in the habeas context, the Supreme Court has refused to interpret "conduct, transaction, or occurrence" as broadly encompassing a "habeas petitioner's trial, conviction, or sentence," reasoning that "[u]nder that comprehensive definition, virtually any new claim introduced in an amended petition will relate back, for federal habeas claims, by their very nature, challenge the constitutionality of a conviction or sentence, and commonly attack proceedings anterior thereto." *Id.* Instead, it has counseled that an amendment relates back to a habeas petition under Rule 15(c) "[s]o long as the original and amended petitions state claims that are tied to a

*common core of operative facts." Id.* at 664, 125 S. Ct. 2562
(emphasis added).

> In "search[ing] for a common core of operative facts in the two
> pleadings," *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d
> Cir. 2004), courts should remain aware that "the touchstone for
> relation back is fair notice, because Rule 15(c) is premised on the
> theory that 'a party who has been notified of litigation concerning
> a particular occurrence has been given all the notice that statutes of
> limitations were intended to provide,'" *Glover v. FDIC*, 698 F.3d
> 139, 146 (3d Cir. 2012). "Thus, only where the opposing party is
> given 'fair notice of the general fact situation and the legal theory
> upon which the amending party proceeds' will relation back be
> allowed." *Glover*, 698 F.3d at 146 (quoting *Bensel*, 387 F.3d at
> 310). For example, we have held that "amendments that restate the
> original claim with greater particularity or amplify the factual
> circumstances surrounding the pertinent conduct, transaction[,] or
> occurrence in the preceding pleading fall within Rule 15(c)"
> because the opposing party will have had sufficient notice of the
> circumstances surrounding the allegations contained in the
> amendment. *Bensel*, 387 F.3d at 310.

*United States v. Santarelli*, 929 F.3d 95, 101 (3d Cir. 2019).

This Court finds that petitioner's ineffective assistance of counsel claim raised in his

supplemental brief does relate back. Petitioner's affidavit attached to his initial 2014 filing

indicated how petitioner had to bring to his counsel's attention that the PSR had the wrong

sentencing guidelines. (*See* ECF 1-1 at 2). Additionally, petitioner alleged in his memorandum of

law in support of his § 2255 motion that counsel failed to investigate his criminal history

category. (*See* ECF 1-2 at 9). Any ambiguity with respect to what petitioner was at least

attempting to allege in his initial § 2255 filings from January, 2014, were resolved by petitioner's

traverse filed in June 23, 2014, in which he stated as follows:

> the government has not answered petitioner's claim, which is set
> forth in sentencing records as well as in petitioners affidavit
> submitted in his original filing, the claim that counsel failed to
> investigate petitioners criminal history category and offense level,
> counseling petitioner under the "wrong" sentencing guidelines,
> causing petitioner to reject the governments initial plea[.]

(ECF 8 at 4). As the claim relates back, this Court finds that it is timely.

2. *Merits*

"Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." *Lafler v. Cooper*, 566 U.S. 156, 162, 132 S. Ct. 1376, 1384 (2012). "When addressing a guilty plea, counsel is required to give a defendant enough information "'to make a reasonably informed decision whether to accept a plea offer.'"" *United States v. Bui*, 795 F.3d 363, 367 (3d Cir. 2015) (quoting *Shotts v. Wetzel*, 724 F.3d 364, 376 (3d Cir. 2013) (quoting *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992))). Potential sentencing exposure is an important factor in a defendant's decision-making process. *See id.* Indeed, as noted by the Third Circuit, "[k]nowledge of the comparative exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." *Day*, 969 F.2d at 43. "In order to provide this necessary advice, counsel is required 'to know the Guidelines and the relevant Circuit precedent. . . .'" *Bui*, 795 F.3d at 367 (quoting *United States v. Smack*, 347 F.3d 533, 538 (3d Cir. 2003)). "A defendant who rejects a guilty plea and receives a more severe sentence after trial makes a claim of ineffective assistance when 'he alleges that the advice he received was so incorrect and so insufficient that it undermined his ability to make an intelligent decision about whether to accept the offer.'" *Morris v. Adm'r New Jersey State Prison*, 770 F. App'x 601, 605 (3d Cir. 2019) (quoting *Day*, 969 F.2d at 43).

In asserting that petitioner failed to show that counsel's performance fell below an objective standard of reasonableness, respondent asserts that there is no evidence in the record to support petitioner's claim that trial counsel overestimated his sentencing exposure under the plea offer. (*See* ECF 36 at 10). However, given petitioner's supplemental brief regarding the exposure

he states counsel advised him during the plea negotiations, this Court does not find this reason sufficient to deny this claim, at least not without first conducting an evidentiary hearing.

The government's stronger argument with respect to prong one of the *Strickland* analysis on this claim is that even if counsel did in fact advise petitioner that he was at criminal history category IV rather than III, this was not constitutionally deficient advice. (*See* ECF 36 at 11). In support of this argument, respondent relies on *Shotts*. In *Shotts*, the Third Circuit declined to hold that a decision is only reasonably informed if counsel has provided an exact or close estimate of the maximum sentencing exposure. *See* 724 F.3d at 376. However, in *Shotts*, the Third Circuit also noted in that case that the attorney had "informed Shotts of the maximum sentence for each offense and that the aggregate sentence could increase quickly if the Judge chose to run those sentences consecutively – something Shotts understood the Judge had the discretion to do." *Id.* The record in this case is somewhat less clear than in Shotts such that, out of the abundance of caution, this Court will not deny this claim based on this argument at this time.

Nevertheless, even though this Court declines to deny this claim based on prong one of the *Strickland* analysis, petitioner still must show that he was prejudiced for him to be entitled to relief. In the context of rejecting a plea, petitioner must show that "'but for counsel's deficient performance there is a reasonable probability he and the trial court would have accepted the guilty plea' and the resulting sentence would have been lower." *Shotts*, 724 F.3d at 376 (citing *Lafler*, 132 S. Ct. at 1391).

Petitioner states in his supplemental brief that but for counsel's performance, there is a reasonable probability that he and the trial court would have accepted the guilty plea. (*See* ECF 32 at 14). The government counters that "the only evidence of record on the issue indicates that Petitioner was aware that there were no guarantees as to his Criminal History Category." (ECF

36 at 13). This appears to true based on the record provided to this Court, however, this argument does not go to the central question of whether, assuming counsel's statements to petitioner regarding his criminal history category during plea negotiations constituted deficient performance, there is a reasonable probability that petitioner would have pled guilty but for that deficient performance. Thus, this Court will not deny this claim based on this argument by the government at this time.

A stronger argument by the government is that petitioner's own statements seem to refute the statements made his supplemental brief that he would have taken the government's plea offer to a reasonable probability. Indeed, many courts have noted that a petitioner who insists that he is innocent makes it difficult to believe an assertion that he would have accepted a plea. *See, e.g.,* *Welch v. United States*, 370 F. App'x 739, 743 (7th Cir. 2010) (collecting cases). At sentencing, petitioner continued to maintain his innocence. (*See* Crim. No. 10-266, ECF 68 at 9). Furthermore, petitioner's filings in this § 2255 matter noted that, "[d]uring the course of criminal proceedings, the petitioner made his counsel aware that the only possible inappropriateness petitioner 'may' have been involved with was misdemeanor possession of stolen property." (*See* ECF 1-2 at 8). While petitioner's own statements in his criminal and habeas proceedings place doubt into his statement that he would have accepted the government's plea offer on one count of armed robbery charge, this Court finds that arriving at such a decision involves a credibility determination given petitioner's alternative assertions in his counseled supplemental brief. This can, should, and will be done at an evidentiary hearing on this claim where this Court can better assess petitioner's credibility on this point.

Accordingly, this Court finds that an evidentiary hearing is warranted on this claim.

K. Cumulative Error

Finally, petitioner brings a claim of cumulative error. In light of the fact that two of plaintiff's ineffective assistance of counsel claims warrant evidentiary hearings, this Court will reserve judgment on petitioner's cumulative error claim at this time.

## V.    CERTIFICATE OF APPEALABILITY ON DENIED CLAIMS

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2255. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell,* 537 U.S. 322, 327 (2003). Applying this standard, the Court finds that a certificate of appealability shall not issue on the claims denied in this opinion. This Court reserves judgment on whether a certificate of appealability should issue on the remaining claims until after a hearing is completed and this Court issues its opinion on the merits on the remaining claims.

## VI.    CONCLUSION

For the foregoing reasons, most petitioner's claims are denied. A certificate of appealability shall not issue on these denied claims. However, this Court will conduct an evidentiary hearing on petitioner's claims that counsel was ineffective by rejecting a plea offer from the government without petitioner's consent as well as his claim that counsel was ineffective by giving petitioner the wrong criminal history category score during plea negotiations. Furthermore, this Court will reserve judgment on petitioner's cumulative error

claim until after the evidentiary hearing is complete. At the evidentiary hearing, the Court

expects to hear testimony from petitioner along with petitioner's trial counsel on the remaining

claims. An appropriate order will be entered.


DATED: ~~November~~ December 18 , 2019

PETER G. SHERIDAN
United States District Judge