**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| STEVEN L. BAKER, | : | |
| | : | |
| Petitioner, | : | Civ. No. 14-370 (PGS) |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | **OPINION** |
| | : | |
| Respondent. | : | |

**PETER G. SHERIDAN, U.S.D.J.**

## I.   INTRODUCTION

Petitioner, Steven Baker ("Petitioner" or "Baker"), is a federal prisoner proceeding with a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. Previously, this Court analyzed Petitioner's § 2255 motion and denied most of his claims. (*See* ECF 43 & 44). However, certain claims required an evidentiary hearing before a decision could be reached on them. As a result, this Court also reserved judgment on Petitioner's claim of cumulative error until all claims were decided. Subsequently, this Court conducted an evidentiary hearing on Petitioner's remaining ineffective assistance of counsel claims. Upon considering the evidence produced at the hearing, as well as the parties' supplemental briefs, this Court will deny Petitioner's remaining § 2255 claims. However, this Court shall grant a certificate of appealability on Petitioner's claim that counsel was ineffective with respect to her advice on Petitioner's trial sentencing exposure related to the stacking provisions on his 18 U.S.C. § 924(c) counts.

## II.    BACKGROUND

This Court laid out the procedural and factual background giving rise to Petitioner's charges in its previous opinion and need not do so again here in such detail. Petitioner was convicted at a jury trial before now retired Chief Judge Garrett E. Brown, Jr. on three counts of bank robbery by force or violence and three counts of using a firearm in connection with the three robberies. Petitioner received a sentence of eighty-seven months imprisonment on the three bank robbery charges to be served concurrently with each other and to be served consecutively to fifty-seven years imprisonment on the firearms convictions.

The United States Court of Appeals for the Third Circuit affirmed the judgment of conviction on direct appeal and the United States Supreme Court denied a petition for writ of certiorari. *See United States v. Baker*, 496 F. App'x 201 (3d Cir. 2012), *cert. denied, Baker v. United States*, 568 U.S. 1148 (2013). Petitioner then filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. (*See* ECF 1). As this Court noted in a prior opinion, Petitioner raised the following claims:

1. Counsel was ineffective for rejecting a plea offer from the government without first conveying the offer to Petitioner.

2. Counsel was ineffective for failing to object to the use of cell phone data for geographical information without the government first obtaining a search warrant.

3. Counsel was ineffective for failing to investigate and or move to suppress De Shawn Clayton's trial testimony on the basis of Prosecutorial misconduct.

4. Counsel failed to request a Franks hearing concerning the issuance of the warrant.

5. Counsel was ineffective for failing to call Agent Gallagher as a defense witness.

6. Counsel was ineffective for failing to object and/or request jury instruction.

7. Counsel was ineffective for failing to appeal the insufficiency of the evidence presented at trial to obtain the conviction.

8. Counsel was ineffective in her failure to hire a latent print examiner, and a forensic video analyst, and/or present exculpatory evidence, namely, fingerprints, fabric, footwear, and glove impressions.

9. Prosecutorial misconduct.

10. Cumulative Error.

*See Baker v. United States*, No. 14-370, 2019 WL 6888537, at *2 (D.N.J. Dec. 18, 2019).

Ultimately, this Court denied most Petitioner's claims. Nevertheless, this Court found it necessary to conduct an evidentiary hearing on Petitioner's claim that counsel was ineffective by rejecting a plea offer from the government without Petitioner's consent as well as his claim that counsel was ineffective by giving Petitioner the wrong criminal history category score during plea negotiations. Furthermore, given that this Court needed to conduct an evidentiary hearing on these two ineffective assistances of counsel claims, this Court reserved judgment on Petitioner's cumulative error claim.

After this Court's denied most of Petitioner's claims, Petitioner's counsel noted she intended to develop the record at the evidentiary hearing that Petitioner's counsel gave Petitioner improper advice about the stacking provisions of 18 U.S.C. § 924(c), thereby improperly stating Petitioner's trial sentencing exposure before he ultimately rejected the government's plea offer. (*See* ECF 47). Under the stacking provisions of 18 U.S.C. § 924(c) in place at the time Petitioner received his sentence, if Petitioner was convicted on all three § 924(c) charges at trial, he faced a minimum sentence of fifty-seven years imprisonment.[1] Petitioner asserted that his trial counsel,

---

[1] As an aside:

Robin Lord, Esq., stated to him during the plea negotiation process that his trial sentencing exposure on the § 924(c) counts was much less than fifty-seven years. Respondent opposed Petitioner's request to seek to develop the record on this claim. (*See* ECF 51 & 53). More specifically, Respondent argued this claim was time-barred and/or should be denied on the merits. During subsequent phone conferences prior to the evidentiary hearing between this Court and the parties, this Court reserved judgment on the timeliness issue, noting it would accept testimony on the claim at the hearing in the event the claim was found to be timely.

Thereafter, this Court conducted an in-person evidentiary hearing on Petitioner's remaining § 2255 claims. Petitioner testified as did Ms. Lord. The parties then submitted post-hearing briefs in support of their arguments. (*See* ECF 59 & 60).

## III.  DISCUSSION

Prior to analyzing the merits of Petitioner's remaining ineffective assistance of counsel claims, this Court will first state the applicable ineffective assistance of counsel standard that Petitioner needs to meet to warrant relief on his remaining ineffectiveness claims. The Sixth

---

> [t]hrough the passage of "the First Step Act" in December of 2018, the practice of "stacking" § 924(c) counts statutorily has been precluded. After its enactment, the penalties for a second consecutive § 924(c) offense can only be imposed where there is an intervening conviction between the first and second offenses. *See* 18 U.S.C. § 924(c)(1)(C). Congress withheld retroactive application of this change to the class of offenders whose convictions for stacked § 924(c) offenses had already become final. *See* First Step Act of 2018, Pub. L. No. 115-391, § 403(a), 132 Stat. 5194, 5221–22.

*United States v. Robinson*, Crim. No. 06-318, 2022 WL 17546525, at *1 (W.D. Pa. Dec. 9, 2022); *see also United States v. Hodge*, 948 F.3d 160, 161 n.2 (3d Cir. 2020). Petitioner's judgment of conviction in his criminal case became final prior to the enactment of the First Step Act. However, it is worth noting that Petitioner currently has a pending motion for sentence reduction/compassionate release pending in his criminal action. (*See* Crim. No. 10-266 ECF 76). That motion will be decided in Petitioner's criminal action in due course.

Amendment guarantees effective assistance of counsel. In *Strickland v. Washington,* 466 U.S. 668 (1984), the Supreme Court articulated the two-prong test for demonstrating when counsel is deemed ineffective. First, a petitioner must show that considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. *See id.* at 688; *see also Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013) (noting that it is necessary to analyze an ineffectiveness claim in light of all of the circumstances) (citation omitted). A petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. *See Strickland*, 466 U.S. at 690. Under this first prong of the *Strickland* test, scrutiny of counsel's conduct must be "highly deferential." *See id.* at 689. Indeed, "[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. The reviewing court must make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. If counsel makes "a thorough investigation of law and facts" about his plausible options, the strategic choices he makes accordingly are "virtually unchallengeable." *Gov't of Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1432 (3d Cir. 2006) (citing *Strickland*, 466 U.S. at 690-91). If, on the other hand, counsel pursues a certain strategy after a less than complete investigation, his choices are considered reasonable "to the extent that reasonable professional judgments support the limitations on investigation." *Rolan v. Vaughn*, 445 F.3d 671, 682 (3d Cir. 2006) (citing *Strickland*, 466 U.S. at 690-91).

The second prong of the *Strickland* test requires a petitioner to affirmatively prove prejudice. *See* 466 U.S at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*; *see also McBridge v. Superintendent, SCI Houtzdale*, 687 F.3d 92, 102 n.11 (3d Cir. 2012). "This does not require that counsel's actions more likely than not altered the outcome, but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011) (internal quotation marks and citations omitted).

"With respect to the sequence of the two prongs, the *Strickland* Court held that 'a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice... that course should be followed.'" *Rainey v. Varner*, 603 F.3d 189, 201 (3d Cir. 2010) (quoting *Strickland*, 466 U.S. at 697).

A. <u>Ineffective assistance of counsel by rejecting a plea offer from the government without first offering it to Petitioner</u>

Petitioner's first remaining claim is that Ms. Lord was ineffective by failing to inform Petitioner about a purported government plea offer that would have allowed Petitioner to plead guilty solely to criminal possession of stolen property. In a prior opinion, this Court explained the factual underpinnings giving rise to this claim as well as why an evidentiary hearing was necessary prior to this Court resolving it as follows:

> In petitioner's first claim, he asserts trial counsel rejected a plea offer from the government without petitioner's consent. More specifically, petitioner states as follows:
>
>> The governments [sic] first plea offer was for the dismissal of the two armed bank robbery charges

6

for a guilty plea to the remaining one count of
armed bank robbery charge.

As a counter offer to the governments [sic] plea
offer, defense counsel offered a dismissal of "all"
three armed bank robbery charges for a guilty plea
of "misdemeanor possession of stolen property."

The government rejected defense counsel's counter
offer of misdemeanor possession of stolen property
and instead the government offered "criminal
possession of stolen property" in exchange for the
dismissal of the "three" armed bank robbery
charges.

Counsel rejected the criminal possession of stolen
property plea offer because counsel erroneously
believed that the petitioner would still be exposed to
the same amount of prison time as if the petitioner
would have plead [sic] to one count of armed bank
robbery, based, upon a failure to investigate
petitioner's offense level and criminal history
category.

Counsel incorrectly assumed that since petitioner
had not, initially, accepted the one count of armed
bank robbery plea offer, from the government, that
petitioner would have rejected the criminal
possession of stolen property plea offer, therefore
counsel rejected the government's offer without first
consulting with petitioner and without petitioner's
consent....

[I]f counsel would have properly investigated the
facts and the law, relaying and counseling petitioner
on the government's plea offer, petitioner would
have accepted the offer and would not have
proceeded to trial on the charges.

(ECF 1-2 at 9-10).

The government asserts that it never gave petitioner a second plea
offer and that the only plea offer that was given was for petitioner
to plead to one bank robbery in exchange for not pursuing charges
against him on the two other bank robberies. (*See* ECF 7 at 14;
ECF 7-1). Thus, according to the government, because a plea to a

lesser charge was never offered to petitioner's trial counsel, counsel could not have been ineffective for rejecting it.

The United States Supreme Court has held that "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *See Missouri v. Frye*, 566 U.S. 134, 145 (2012). "[T]he fact of a formal offer means that its terms and its processing can be documented so that what took place during the negotiation process becomes more clear if some later inquiry turns on the conduct of earlier pretrial negotiations." *Id.* at 146. Accordingly, deficient performance occurs when counsel fails to communicate formal plea offers to the defendant. *See id.* at 146-47. Once that is satisfied, a petitioner still must show prejudice. In *Frye*, the Supreme Court noted that:

> To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law. To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time.

*Frye*, 566 U.S. at 147 (citing *Glover v. United States*, 531 U.S. 198, 203 (2001). As one court has noted:

> A petitioner ... who seeks to establish a claim of ineffective assistance of counsel in the context of plea bargaining, consequently must make a double showing – (1) that the prosecutor extended the plea offer and (2) that his or her attorney either failed to communicate the offer to him or misadvised him concerning the advantages and disadvantages of the offer so as to cause the non-acceptance of an otherwise beneficial outcome by a favorable guilty plea.

*Compean v. United States*, No. 12-0730, 2013 WL 6196517, at *7 (W.D. Ky. Oct. 18, 2013) (citing *Lint v. Prelesnik*, No. 09-10044, 2011 WL 3241840, at *11 (E.D. Mich. July 29, 2011); *Robinson v. United States*, 744 F. Supp. 2d 684, 696 (E.D. Mich. 2010)); *report and recommendation adopted by*, 2013 WL 6196533 (W.D. Ky. Nov. 26, 2013). Thus, whether a defendant is ever offered a formal plea offer is a vital factor in determining whether counsel is deemed to be ineffective because mere informal plea discussions are not enough to trigger counsel's duty to inform. *See Shnewer v. United States*, No. 13-3769, 2016 WL 867461, at *15 (D.N.J. Mar. 7, 2016) (citing *Hull v. United States*, No. 15-0123, 2015 WL 5009998, at *2 (W.D. Wis. Aug. 15, 2015)) ("The Court made clear in *Frye*, that duty applies only when the plea offer is a 'formal one.' The Court has never held that defense counsel can be found constitutionally ineffective for failing to tell their clients about informal discussions they have with the government about possible plea offers."); *Mavashev v. United States*, No. 11-3724, 2015 WL 1508313, at *9 (E.D.N.Y. Mar. 31, 2015) (noting that there is a significant distinction between formal plea offers and informal plea offers); *United States v. McCall*, No. 00-0505, 2014 WL 2581353, at *3 (N.D. Cal. June 9, 2014) ("In reality, there is either a formal plea offer, or in its absence, mere discussions between counsel. Mere conversations are rarely recorded and always subject to interpretation and mis-remembering. It would be a near-impossible burden to require defense counsel to update defendant on each twist and turn in informal conversations. And it would be impossible for the government to reconstruct and prove each such twist and turn in the communication, much less prove that defense counsel passed on the twists and turns to their client.... Therefore, to transmogrify mere conversation into an "informal plea offer" and then to further say it must be communicated to an accused on pain of Section 2255 relief would be a nifty sleight of hand.") (citations omitted); *United States v. Merlino*, Crim. No. 99-10098, 2014 WL 793987, at *4 (D. Mass. Feb. 28, 2014) ("A majority of courts ... have held that a formal plea offer must consist of something more than preliminary oral communications.") (citations omitted); *Montgomery v. United States*, No. Crim. 07-00036, 2013 WL 6196554, at *4 (W.D. Ky. Nov. 26, 2013) ("Although there has been little exposition regarding the precise definition of the term "formal offer," the Court clearly intended to distinguish "offers" made during the course of preliminary negotiations from those made once negotiations have concluded. In other words, while there is no touchstone for assessing the formality of an offer, there must at the very least be some basis for concluding that the alleged offer could have been accepted or

rejected without further discussion or negotiation."); *Compean*, 2013 WL 6196517, at *7 ("The threshold issue for the Court therefor is whether the Government ever extended a formal plea offer to the Defendant in the first instance.") (citing *Guerrero v. United States*, 383 F.3d 409, 417 (6th Cir. 2004); *Strollo v. United States*, No. 05-0113, 2007 WL 2071940, at *3 (N.D. Ohio July 16, 2007))).

Courts do tend to look at several factors to determine whether the prosecutor extended a formal plea offer. Indeed:

> One court has noted that plea agreements "are essentially contracts" and that "for a contractual offer to exist, it must contain 'sufficiently definite terms to enable [a] fact finder to interpret and apply them." *United States v. Petters*, 986 F. Supp. 2d 1077, 1082 (D. Minn. 2013) (quoting *Neb. Beef, Ltd. v. Wells Fargo Bus. Credit, Inc.*, 470 F.3d 1249, 1251 (8th Cir. 2006)). Thus, in *Petters*, the District of Minnesota determined that a formal plea offer had not been extended because there was "an absence of any discussion of the charges to which Petters would acknowledge guilt, the factual basis for a plea, or restitution or forfeiture issues." *Id.* A court in this Circuit has similarly stated that, "it is clear that an oral discussion of the sentencing range for a possible plea agreement that does not include an agreement on the charges to which the defendant will plead guilty and the facts that he will admit, does not constitute a formal plea offer." [*United States v.*] *Waters*, [No. 13-115,] 2013 WL 3949092, at *8 [(E.D. Pa. July 31, 2013)] (citing *Enright v. United States*, 347 F. Supp. 2d 159, 165 (D.N.J. 2004)).

*Shnewer*, 2016 WL 867461, at *16. In *Shnewer*, Judge Kugler determined that the petitioner failed to show that a formal plea offer had been made because of a lack of a discussion regarding the charges to which the defendant would have pled guilty to along with a factual basis for the plea. *See id.* Furthermore, Judge Kugler noted that petitioner failed to show that the prosecutor had the authority to bind the government. *See id.*

In this case, and unlike *Shnewer*, petitioner does indicate the charge to which he would have pled guilty to, namely criminal possession of stolen property in exchange for the dismissal of the

three-armed bank robbery charges. While the government indicates
in its brief that this assertion is false, they provide no
declaration/affidavit from the prosecutor and/or from petitioner's
trial counsel to support this argument. Accordingly, this Court
finds the record on this claim at present is inconclusive. Thus, an
evidentiary hearing will be necessary to resolve this claim.

*Baker*, 2019 WL 6888537, at *4–6.

Petitioner testified at the hearing that Ms. Lord rejected a government offer of Petitioner

possibly pleading guilty to criminal possession of property because she felt that it carried the

same amount of time if Petitioner plead guilty to one count of bank robbery and one count under

§ 924(c). (*See* ECF 61 at 19). Ms. Lord testified quite differently than Petitioner at the

evidentiary hearing. She testified that the *only* plea offer by the government was the written plea

offer for Petitioner to plead guilty to one bank robbery charge and one count under § 924(c) that

she ultimately discussed with Petitioner in-person on March 21, 2010 while in custody. (*See* ECF

61 at 53).

The record also now includes a sworn declaration from the former Assistant United

States Attorney, Harvey Bartle, IV, Esq., who prosecuted Petitioner. (*See* July 1, 2021 Evid.

H'rg, Ex. 5). Mr. Bartle agrees with Ms. Lord that Petitioner only received one plea offer,

namely the one dated February 17, 2010 – which offered Petitioner to plead guilty to one count

of bank robbery and one count under § 924(c).

Upon considering this record, Petitioner is not entitled to collateral relief on this claim.

Besides his own unsubstantiated testimony, Petitioner has come forward with no other evidence

to show that the government offered Petitioner a plea-offer to only criminal possession of stolen

property. Comparatively, Petitioner's former trial counsel through her sworn testimony, and the

former Assistant United States Attorney, through his declaration, expressly state that the

government never made such an offer. This Court finds this evidence and testimony from Ms.

11

Lord and Mr. Bartle persuasive such that Petitioner has failed to show that such an offer to plead

to only criminal possession of stolen property was ever made by the government. Thus, Ms. Lord

was not ineffective for failing to inform Petitioner about a plea offer that was never put on the

table. *See Korzun v. USA*, No. 20-79, 2022 WL 1256699, at *4 (N.D. W. Va. Apr. 1, 2022) ("It

cannot be ineffective assistance of counsel for petitioner's attorney to have failed to discuss plea

agreements that were never offered."), *report and recommendation adopted by*, *United States v.*

*Korzun*, 2022 WL 1250389 (N.D. W. Va. Apr. 27, 2022); *Ogata v. United States*, Crim. No. 12-

00190, 2015 WL 8492024, at *10 (D. Haw. Dec. 10, 2015) (citing *Eisemann v. Herbert*, 401

F.3d 102, 109 (2d Cir. 2005) (citing *Burger v. Kemp*, 483 U.S. 776, 785-86 (1987))) ("Defense

counsel cannot be unconstitutionally ineffective for failing to obtain a plea agreement if the

United States never offered one."). This claim is therefore denied.

    B.  <u>Ineffective assistance of counsel during the plea negotiation process related to</u>
        <u>purported inaccurate advice regarding Petitioner's criminal history category score</u>

      Petitioner's next remaining claim is that Ms. Lord gave inaccurate advice to Petitioner

during the plea negotiation process with respect to Petitioner's criminal history category score.

More specifically, this Court noted as follows with respect to this claim in its prior opinion:

      According to petitioner as stated in his supplemental brief:

> Trial counsel brought the plea offer of February 17,
> 2010 to Mr. Baker. However, when advising him as
> to his sentencing exposure pursuant to this plea
> agreement, she erroneously calculated his Criminal
> History Category as Category IV, when in fact it
> should have been a Category III, or did not calculate
> it at all (the record is not clear without the testimony
> of Ms. Lord, though the error is clear based upon
> the current record). The error was the result of
> misidentifying the date at which Mr. Baker's parole
> has maxed out on a prior parole violation stemming
> from a conviction he received when he was 18 years
> old. Mr. Baker's total Guideline Level was 27 under

> the terms of the Plea Agreement. Thus, Mr. Baker
> believed that he was looking at a Guideline Range
> of 100 to 125 months for the bank robbery count,
> instead of the 87 to 108- month range he was
> actually facing.

> (ECF 32 at 12). According to petitioner, the mistake with respect
> to his criminal history category appeared in his pre-sentence report
> ("PSR"). (*See id.*). However, petitioner ultimately reported the
> mistake to his trial counsel upon reviewing the PSR prior to
> sentencing. As indicated above, he ultimately received a sentence
> of 87 months on the armed robbery convictions. Petitioner though
> indicates that had his counsel given him the proper guideline range
> during the plea negotiation process, he was would have accepted
> the plea deal offered by the government. (*See id.* at 19).

*Baker*, 2019 WL 6888537, at *16. This Court determined that this claim was timely. *See id.* at

*16-17. Ultimately though, it was determined that an evidentiary hearing on this claim was

warranted. *See id.* at *17-18. This Court explained at the time of the previous opinion in this case

on this claim as follows:

> Defendants have a Sixth Amendment right to counsel, a right that
> extends to the plea-bargaining process." *Lafler v. Cooper*, 566 U.S.
> 156, 162, 132 S. Ct. 1376, 1384 (2012). "When addressing a guilty
> plea, counsel is required to give a defendant enough information
> "'to make a reasonably informed decision whether to accept a plea
> offer.'"" *United States v. Bui*, 795 F.3d 363, 367 (3d Cir. 2015)
> (quoting *Shotts v. Wetzel*, 724 F.3d 364, 376 (3d Cir. 2013)
> (quoting *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992))).
> Potential sentencing exposure is an important factor in a
> defendant's decision-making process. *See id.* Indeed, as noted by
> the Third Circuit, "[k]nowledge of the comparative exposure
> between standing trial and accepting a plea offer will often be
> crucial to the decision whether to plead guilty." *Day*, 969 F.2d at
> 43. "In order to provide this necessary advice, counsel is required
> 'to know the Guidelines and the relevant Circuit precedent....'"
> *Bui*, 795 F.3d at 367 (quoting *United States v. Smack*, 347 F.3d
> 533, 538 (3d Cir. 2003)). "A defendant who rejects a guilty plea
> and receives a more severe sentence after trial makes a claim of
> ineffective assistance when 'he alleges that the advice he received
> was so incorrect and so insufficient that it undermined his ability to
> make an intelligent decision about whether to accept the offer.'"

*Morris v. Adm'r New Jersey State Prison*, 770 F. App'x 601, 605
(3d Cir. 2019) (quoting *Day*, 969 F.2d at 43).

In asserting that petitioner failed to show that counsel's
performance fell below an objective standard of reasonableness,
respondent asserts that there is no evidence in the record to support
petitioner's claim that trial counsel overestimated his sentencing
exposure under the plea offer. (*See* ECF 36 at 10). However, given
petitioner's supplemental brief regarding the exposure he states
counsel advised him during the plea negotiations, this Court does
not find this reason sufficient to deny this claim, at least not
without first conducting an evidentiary hearing.

*Baker*, No. 14-370, 2019 WL 6888537, at *17.

Petitioner testified at the evidentiary hearing that Ms. Lord told him he was facing

fifteen-to-seventeen years imprisonment if he took the government's plea offer. (*See* ECF 61 at

11). Petitioner testified he understood there was a mandatory seven-year sentence on the § 924(c)

charge but that the Judge would have discretion to sentence Petitioner up to ten years on the

armed robbery charge. (*See* ECF 61 at 11-12). Given the range that Petitioner testified to, this

means that he was facing eight-to-ten years on the armed robbery charge. The plea offer

indicated Petitioner was facing a possible offense level of 28 if he pled. (*See* July 1, 2021 Evid.

Hr'g, Ex. 2). The United States Sentencing Guidelines in place at the time called for a sentence

with an offense level of 28 and a criminal history category of III at 97-121 months, or

approximately eight-to-ten years. *See https://www.ussc.gov/sites/default/files/pdf/guidelines-*

*manual/2009/manual/SENTNTAB.pdf* (last visited December 28, 2022).

Petitioner fails to show that Ms. Lord's actions on this issue fell below an objective

standard of reasonableness. Her advice to him on his sentencing exposure based on the plea offer

did not overstate his possible sentence based on overestimating Petitioner's criminal history

category score as IV rather than III. As he testified to, she told him the correct sentence range if

he accepted the plea offer (8/10 years plus 7 = 15-17 years). Thus, this claim is denied.

C.  Ineffective assistance on counsel's purported advice during the plea negotiation
    process on Petitioner's sentencing exposure due to the stacking provisions of 18
    U.S.C. § 924(c)

Petitioner's final claim is that Ms. Lord improperly gave Petitioner advice on his possible trial sentencing exposure during the plea negotiation process due to not explaining Petitioner faced up fifty-seven years imprisonment if he was convicted on all three § 924(c) counts. Before reaching the merits on this claim, the parties argue over whether this claim is timely. For the following reasons, this Court finds this claim is timely, but will deny it on the merits.

    i.  *Timeliness*

Section § 2255(f) includes a one-year period in which a petitioner may file a request for relief, which runs from the latest of four specified events:

> (1) the date on which the judgment of conviction becomes final;
> (2) the date on which the impediment to making a motion created
> by governmental action in violation of the Constitution or laws of
> the United States is removed, if the movant was prevented from
> making a motion by such governmental action;
> (3) the date on which the right asserted was initially recognized by
> the Supreme Court, if that right has been newly recognized by the
> Supreme Court and made retroactively applicable to cases on
> collateral review; or
> (4) the date on which the facts supporting the claim or claims
> presented could have been discovered through the exercise of due
> diligence[.]

28 U.S.C. § 2255(f). Petitioner's judgment became final under 28 U.S.C. 2255(f) on January 22, 2013, when the United States Supreme Court denied Petitioner's petition for writ of certiorari on his direct appeal. Thus, Petitioner had one-year from that date in which to file his § 2255 motion.

Petitioner filed his original § 2255 motion on January 13, 2014, or within the applicable one-year statute of limitations. However, the filing of that § 2255 motion did not act to toll the running of the one-year statute of limitations. *See, e.g., Duncan v. Walker*, 533 U.S. 167, 181-82 (2001). Thus, to the extent Petitioner asserts his claim is timely due to filings or statements made

after January 23, 2014 – such as issues first raised in his June, 2014 traverse or in subsequent conversations with the Court as argued by Petitioner – such timeliness arguments by Petitioner are not valid.

Nevertheless, Petitioner's ineffective assistance claim related to his trial sentencing exposure on the stacking provisions on his § 924(c) charges are timely if they relate back to his timely filed original January 13, 2014 § 2255 motion.

> Pursuant to Rule 15(c), an amendment that is otherwise untimely "relates back to the date of the original pleading when ... the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). The Supreme Court has cautioned that courts should not interpret "conduct, transaction, or occurrence" in such a broad manner so as to construe essentially all amendments as permissible under the relation-back doctrine. *See Mayle v. Felix*, 545 U.S. 644, 656–57, 125 S. Ct. 2562, 162 L. Ed. 2d 582 (2005). For example, in the habeas context, the Supreme Court has refused to interpret "conduct, transaction, or occurrence" as broadly encompassing a "habeas petitioner's trial, conviction, or sentence," reasoning that "[u]nder that comprehensive definition, virtually any new claim introduced in an amended petition will relate back, for federal habeas claims, by their very nature, challenge the constitutionality of a conviction or sentence, and commonly attack proceedings anterior thereto." *Id.* Instead, it has counseled that an amendment relates back to a habeas petition under Rule 15(c) "[s]o long as the original and amended petitions state claims that are tied to a *common core of operative facts*." *Id.* at 664, 125 S. Ct. 2562 (emphasis added).
>
> In "search[ing] for a common core of operative facts in the two pleadings," *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir. 2004), courts should remain aware that "the touchstone for relation back is fair notice, because Rule 15(c) is premised on the theory that 'a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide,'" *Glover v. FDIC*, 698 F.3d 139, 146 (3d Cir. 2012). "Thus, only where the opposing party is given 'fair notice of the general fact situation and the legal theory upon which the amending party proceeds' will relation back be allowed." *Glover*, 698 F.3d at 146 (quoting *Bensel*, 387 F.3d at

> 310). For example, we have held that "amendments that restate the
> original claim with greater particularity or amplify the factual
> circumstances surrounding the pertinent conduct, transaction[,] or
> occurrence in the preceding pleading fall within Rule 15(c)"
> because the opposing party will have had sufficient notice of the
> circumstances surrounding the allegations contained in the
> amendment. *Bensel*, 387 F.3d at 310.

*United States v. Santarelli*, 929 F.3d 95, 101 (3d Cir. 2019).

Previously, this Court determined that Petitioner's claim related to counsel's inaccurate advice regarding his criminal history category score during plea negotiations related back to Petitioner's original § 2255 motion. Indeed, this Court noted as follows with respect to that claim:

> According to petitioner as stated in his supplemental brief:
>
>> Trial counsel brought the plea offer of February 17,
>> 2010 to Mr. Baker. However, when advising him as
>> to his sentencing exposure pursuant to this plea
>> agreement, she erroneously calculated his Criminal
>> History Category as Category IV, when in fact it
>> should have been a Category III, or did not calculate
>> it at all (the record is not clear without the testimony
>> of Ms. Lord, though the error is clear based upon
>> the current record). The error was the result of
>> misidentifying the date at which Mr. Baker's parole
>> has maxed out on a prior parole violation stemming
>> from a conviction he received when he was 18 years
>> old. Mr. Baker's total Guideline Level was 27 under
>> the terms of the Plea Agreement. Thus, Mr. Baker
>> believed that he was looking at a Guideline Range
>> of 100 to 125 months for the bank robbery count,
>> instead of the 87 to 108- month range he was
>> actually facing.
>
> (ECF 32 at 12). According to petitioner, the mistake with respect
> to his criminal history category appeared in his pre-sentence report
> ("PSR"). (*See id.*). However, petitioner ultimately reported the
> mistake to his trial counsel upon reviewing the PSR prior to
> sentencing. As indicated above, he ultimately received a sentence
> of 87 months on the armed robbery convictions. Petitioner though
> indicates that had his counsel given him the proper guideline range

during the plea negotiation process, he was would have accepted the plea deal offered by the government. (*See id.* at 19). . . .

This Court finds that petitioner's ineffective assistance of counsel claim raised in his supplemental brief does relate back. Petitioner's affidavit attached to his initial 2014 filing indicated how petitioner had to bring to his counsel's attention that the PSR had the wrong sentencing guidelines. (*See* ECF 1-1 at 2). Additionally, petitioner alleged in his memorandum of law in support of his § 2255 motion that counsel failed to investigate his criminal history category. (*See* ECF 1-2 at 9). Any ambiguity with respect to what petitioner was at least attempting to allege in his initial § 2255 filings from January, 2014, were resolved by petitioner's traverse filed in June 23, 2014, in which he stated as follows:

> the government has not answered petitioner's claim, which is set forth in sentencing records as well as in petitioners affidavit submitted in his original filing, the claim that counsel failed to investigate petitioners criminal history category and offense level, counseling petitioner under the "wrong" sentencing guidelines, causing petitioner to reject the governments initial plea[.]

(ECF 8 at 4). As the claim relates back, this Court finds that it is timely.

*Baker*, 2019 WL 6888537, at *16, 17.

Petitioner argues that his stacking ineffectiveness claim relates back to his claim of ineffectiveness by counsel on her advice related to the criminal history category score. Respondent though argues this Court should analyze whether Petitioner's claim relates back to his claim raised in his original § 2255 motion that counsel failed to get his consent in rejecting a plea offer for misdemeanor possession of stolen property. Petitioner's argument on this point is stronger. Indeed, given that this Court has already determined that Petitioner's criminal history category score relates back, it follows that this Court should analyze whether Petitioner's stacking claim relates back to *that claim* since it's relation back to the original filing makes it

part and parcel part of the original § 2255 motion; otherwise, it could not be considered a timely claim.

Whether Petitioner's stacking ineffectiveness claim relates back to the original § 2255 motion though is perhaps less clear than his ineffective criminal history category score claim. At least with the criminal history category score claim, Petitioner alleged facts in his original § 2255 motion related to that claim. Indeed, Petitioner alluded to counsel's failure to investigate the criminal history category score and how he had to bring the incorrect criminal history category score in the PSR to counsel's attention. There are no similar factual allegations regarding any purported failure on Ms. Lord's part in his original § 2255 motion's memorandum of law regarding his sentencing exposure as it relates to the stacking provisions of the § 924(c) if Petitioner was convicted on all three charges.

Nevertheless, this Court finds that the ineffectiveness stacking claim relates back to the original § 2255 motion. It should be considered part of a common core of operative facts regarding Petitioner's sentencing exposure (as did his ineffectiveness related to the criminal history category score). *United States v. Diaz*, Crim. No. 07-147, 2015 WL 13714165 (M.D. Pa. Mar. 9, 2015) is persuasive on this point. In *Diaz*, a petitioner's initial § 2255 motion argued as follows:

> Defendant averred that trial counsel rendered deficient advice during plea negotiations, causing him to reject various plea offers and proceed to trial. (Doc. 178, p. 4). In his supporting memorandum, Defendant recounted that the Government had offered binding pleas of 21, 20, and finally 19 years, in return for a guilty plea to Count II only. (Doc. 179, pp. 7-8). According to Defendant, trial counsel guaranteed that Defendant could beat the firearms charges of Counts I and III, and advised a rejection of the plea offers on that basis. (*Id.*).

*Diaz*, 2015 WL 13714165, at *1. In a supplemental brief filed after the applicable one-year statute of limitations expired, Diaz sought to raise a claim that "trial counsel did not adequately

advise Defendant of his sentencing exposure, including failing to discuss the consequences of the mandatory consecutive sentences of the § 924(c) counts to the drug count[.]" *Diaz*, 2015 WL 13714165, at *2. In *Diaz*, while the government agreed to the amendment, the Middle District of Pennsylvania also found that this claim related back to the original § 2255 motion because "like the claim raised in his timely motion, the new allegations involve advice rendered by counsel during plea negotiations, and thus arise from a common core of operative facts." *See Diaz*, 2015 WL 13714165, at *3.

Like *Diaz*, Petitioner's ineffective stacking claim involves the advice (and purported deficiencies related therein) trial counsel gave Petitioner during the plea negotiation process. *Cf. Robinson v. United States*, No. 17-22208, 2020 WL 1060421, at *8-9 (S.D. Fla. Mar. 4, 2020) (new claim that counsel failed to advise petitioner of immigration consequences of decision to plead guilty relates back to initial claim counsel coerced petitioner to plead guilty because both claims arise from advice petitioner received on whether to plead guilty). In fact, the ineffectiveness stacking claim is even more related to Petitioner's original § 2255 motion than the claim discussed in *Diaz* because in Petitioner's case, both involved counsel's purported errors by counsel *regarding Petitioner's possible sentencing exposure* (albeit one in the context of if Petitioner took the plea and one related to whether Petitioner went to trial). Accordingly, while perhaps a relatively close case, this Court finds Petitioner's claim as to his former trial counsel's purported ineffectiveness related to her advice on the stacking provisions of § 924(c) and corresponding sentencing exposure during plea negotiations is timely. Thus, the merits of this claim shall be analyzed. For the following reasons though, this claim fails on the merits.

i.  *Merits*

Under the applicable stacking provisions of 18 U.S.C. § 924(c) in place at the time of

Petitioner's trial, while Petitioner faced seven years for his first § 924(c) conviction, he faced

mandatory and consecutive twenty-five-year sentences for each subsequent § 924(c) conviction.

*See* 18 U.S.C. § 924(c)(1)(C) (effective Oct. 6, 2006 to Dec. 20, 2018). This meant if Petitioner

was convicted on all three § 924(c) counts at trial, he faced a mandatory minimum sentence of

fifty-seven years imprisonment.

As noted by the United States Court of Appeals for the Third Circuit, "[k]nowledge of

the comparative exposure between standing trial and accepting a plea offer will often be crucial

to the decision whether to plead guilty." *Day*, 969 F.2d at 43. "In order to provide this necessary

advice, counsel is required 'to know the Guidelines and the relevant Circuit precedent.'" *Bui*,

795 F.3d at 367 (quoting *United States v. Smack*, 347 F.3d 533, 538 (3d Cir. 2003)). In the

context of rejecting a plea, a petitioner must show that "'but for counsel's deficient performance

there is a reasonable probability he and the trial court would have accepted the guilty plea' and

the resulting sentence would have been lower." *Shotts*, 724 F.3d at 376 (citing *Lafler*, 132 S. Ct.

at 1391). However, the Third Circuit has also cautioned that courts should be "wary" of claims

that trial counsel did not adequately advise a defendant about the benefits and consequences of a

plea offer because "defendants will always want the best of both worlds: the chance at acquittal

at trial, yet the chance to plead guilty if the trial defense fails." *Day*, 969 F.2d at 46 n.9.

Petitioner claims Ms. Lord told him during the plea negotiation process that he only faced

twenty-one years if convicted on all three § 924(c) convictions rather than fifty-seven years. (*See*

ECF 61 14-15). More specifically, the following colloquy took place between Petitioner and his

counsel during the evidentiary hearing before this Court:

Q: Based upon your conversation with Ms. Lord, what did you believe your maximum exposure would be if you were convicted of three bank robberies? Setting aside the 924(c)s, just the bank robberies, what did you think your maximum exposure would be if you were indicted and convicted of all three robberies?

A: 10 years for each one of them, so a total of 30 years.

Q: And what did you understand would be the judge's discretion about how much time to give you with respect to the bank robberies if you were convicted of all three of them?

A: That he can give me from 10 to 30 years.

Q: And was that belief based upon a conversation with Ms. Lord?

A: Yes.

Q: What did you believe based on your conversations with her that your maximum exposure would be if you were convicted of three 924(c) charges?

A: 21 years.

Q: And just so we're clear, how did she break down the sentencing for the three 924(c)s?

A: She told me that I would receive seven years for each one of them, and they had to be run consecutive.

Q: Consecutive to the other 924(c)s?

A: Yes.

Q: And what did you understand with respect to concurrent or consecutive sentencing on the 924(c)s and the bank robberies?

A: That they had to be ran separate from the bank robberies.

Q: And when you say separate what do you mean?

A: Consecutive.

Q: So if I'm understanding you correctly, based upon your conversation with Ms. Lord on the day that you reviewed the written plea agreement, you understood that if you rejected that plea agreement, you would be looking at a maximum of 21 years for the 924(c) counts.

A: Yes.

Q: And that that would have to go consecutive to a potential 10 to 30 years on the bank robberies.

A: Yes.

(ECF 61 at 14-15).

Petitioner corroborates his testimony about Ms. Lord purportedly telling him his exposure was twenty-one years on the § 924(c) counts with Ms. Lord's contemporaneous hand-written notes from her March 21, 2010 meeting with him where they discussed the government's plea offer. (*See* July 1, 2021 H'rg, Ex. 4). The most likely reading of these notes support Petitioner's

argument. For example, the notes indicate that she told Petitioner that he faced fifteen-to-seventeen years imprisonment if he accepted the government's plea offer. (*See id.*). However, Ms. Lord's contemporaneous notes also have a "7-7-7" designation with a carrot "<" next to them and then a "21" which would indicate adding the "7s" together, coupled with "15" and then a designation of "36 at least." (*See id.*).

Ms. Lord testified at the evidentiary hearing that she advised Petitioner from the inception of time that he faced fifty-seven years imprisonment if convicted on all three § 924(c) convictions. (*See* ECF 61 at 63). However, her testimony lacks clarity regarding attempting to explain her notes described above which appear to contradict her testimony. Indeed, Ms. Lord testified she had "absolutely no idea" what the "7-7-7" designation with a carat next to "21" meant. (*See* ECF 61 at 90). Later during Petitioner's counsel's cross-examination of Ms. Lord, the following colloquy took place:

> Q: Okay. So let's go back to Exhibit 4 [Ms. Lord's contemporaneous hand-written notes of her meeting with Petitioner on March 21, 2010] if we can?
> A: Okay.
> Q: With the 21 you add 15, right?
> A: Yes. There's a plus, that I'm certain is an "and".
> Q: And obviously there were three potential robberies that he was facing; correct? Yes?
> A: Yes.
> Q: And isn't it reasonable based upon the advice that you gave Mr. Baker in the February 1st letter that 15 was your estimate for conviction of three bank robberies?
> A: That's interesting; like I said before the third or sixth time I have no idea what those numbers mean . . . . [¶] All I can tell you with absolute certainty is that before Steven went to trial he knew how much time he was facing, he absolutely knew . . . . [¶] As far as what these numbers mean, the only I thing I can tell you with absolute certainty is that between 15 and 17 is what he would get, what his exposure was pursuant to the plea agreement. The rest is for conjecture and whatever he testifies to. . . .
> Q: [N]othing on this note of March 21st, 2010 says 57 mandatory/minimum; right?

A: Correct.

Q: There's no 57 anywhere on this page; right?

A: 56.

Q: As a maximum, right?

A: It doesn't say maximum – these are numbers, they – they might be levels, they might be months, they might – I have no idea as I said.

Q: So going back then to the 21 plus 15, you conclude that's 36, right, in your math?

A: 36, 21 and –

Q: And that's where you say at least?

A: Correct.

Q: So clearly that's a reference to the least amount of time he's likely to do?

A: At least yeah.

Q: Okay. But –

A: And it might not be time it could be level 36, I don't – I don't know. I don't know.

Q: Have you ever calculated someone's sentencing guidelines where you added up separate offense level numbers like that?

A: You're probably right about that, yeah.

Q: Doesn't make any sense, right?

A: No, no. Only reason I said is because the 21 was the same as the 21 in this letter.

Q: So we have that coincidence.

A: Yeah.

Q: Okay.

A: As we might have for the five with the ties three is 15, who knows.

Q: Right, okay. And so not only do you say up in the – write down in the upper left-hand corner, 36 at least, and you point then down to an arrow of 56, right, suggesting that you've given him a range; yes?

A: So I guess what – what you're asking me is that did I tell him is he facing between – if he went to trial and lost between 36 and 56 years. Even if that's the case he knew – even if that's the case which I don't believe it bis I know it isn't, he rejected it, he didn't want – he knew he was possibly going to get 56 years in prison if you're telling me that's what I told him and decided to go to trial. But that's not what I told him. . . .

Q: [Y]ou would agree there's a difference between telling somebody that the maximum amount of time that they can do is 56, and telling them the minimum amount of time they could do is 57.

A: Those are two different numbers.

> Q: But there's a difference between characterizing it as a
> maximum versus characterizing it as a mandatory/minimum.
> A: Those are two different numbers, yes.
> Q: Well, let's use the same number. If it were 56, you would agree
> that it's different to tell the client that their maximum is 56, than it
> is to tell a client that their mandatory/minimum is a 56; correct?
> A: Yes.
> Q: And that that would be important for a client to consider in
> determining whether or not to take a plea agreement or go to trial.
> A: Sure.

(*See* ECF 61 at 94-99).

Based on this record, this Court finds Petitioner has established that Ms. Lord incorrectly advised Petitioner about the stacking provisions of § 924(c) and did not tell Petitioner he faced a mandatory minimum sentence of fifty-seven years imprisonment if he went to trial and was convicted on all three of these charges. This Court reaches this conclusion relying on Petitioner's testimony along with Ms. Lord's contemporaneous handwritten notes which support Petitioner's testimony. While Ms. Lord testified otherwise, she failed to explain to this Court's satisfaction anything other than what logic dictate her contemporaneous handwritten notes indicate, that she told Petitioner he faced twenty-one years on the § 924(c) charges.

Having determined that Ms. Lord improperly advised Petitioner on his sentencing exposure if he went to trial, the next step typically would be analyzing whether such advice by Ms. Lord fell below an objective standard of reasonableness. This Court though need not decide this issue because Petitioner has failed to satisfy the second prong of the *Strickland* test, namely a showing of prejudice. Thus, even assuming *arguendo* Ms. Lord's performance fell below an objective standard of reasonableness with respect to this claim, for the reasons described *infra*, Petitioner fails to show to a reasonable probability that he would have accepted the government's plea offer of fifteen-seventeen years imprisonment had Ms. Lord properly advised him about his sentencing exposure on the three § 924(c) counts at trial.

Throughout the course of Petitioner's criminal proceedings, including at sentencing, Petitioner maintained his innocence. Many courts have questioned whether a petitioner who maintains his innocence can make the required reasonable probability showing under *Lafler* that they would have accepted the plea offer. *See, e.g., United States v. Tarnai*, 782 F. App'x 128, 132 (3d Cir. 2019) ("[Petitioner] has not established the government would have allowed him to take the plea while insisting on his innocence."); *Humphress v. United States*, 398 F.3d 855, 859 (6th Cir. 2005) (noting that defendant's assertion of innocence undermined his contention that he would have accepted a plea deal); *Sanders v. United States*, 341 F.3d 720, 723 (8th Cir. 2003) ("A defendant who maintains his innocence at all stages of his criminal prosecution and shows no indication that he would be unwilling to admit his guilt undermines his later § 2255 claim that he would have pleaded guilty if only he had received better advice from his lawyer."); *United States v. Stevens*, 149 F.3d 747, 748 (8th Cir. 1998) (concluding that defendant could not establish prejudice when his post-trial assertions of innocence demonstrated that he would not have entered a guilty plea).

Insistence of innocence though is not dispositive on the issue of whether a petitioner can establish with reasonable probability that he would have accepted a guilty plea but for counsel's improper advice. *See Melo v. United States*, 825 F. Supp. 2d 457, 463 (S.D.N.Y. 2011) (citation omitted) ("Insistence on innocence, although not dispositive, weighs against finding that Melo would have accepted a plea deal."). Indeed:

> it does not make sense to say that a defendant's protestations of innocence belie his later claim that he would have accepted a guilty plea. . . . These declarations of innocence are . . . not dispositive on the question. Protestations of innocence throughout trial are properly a factor in the trial court's analysis, however they do not, by themselves, justify summary denial of relief without an evidentiary hearing.

*Smith v. United States*, 348 F.3d 545, 552 (6th Cir. 2003) (internal quotation marks and citation omitted) (citing *Cullen v. United States*, 194 F.3d 401, 404-407 (2d Cir. 1999)).

Nonetheless, Petitioner's protestations of innocence in this case are certainly relevant and can be considered as a factor to assist this Court in determining whether, to a reasonable probability, Petitioner would have accepted the government's fifteen-to-seventeen-year plea offer. On this point though, this factor weighs against Petitioner. Indeed, Petitioner not only maintained his innocence throughout the trial, but, despite not needing to speak at sentencing, Petitioner also maintained his innocence at that time. (*See* Crim. No. 10-266, ECF 68 at 9).

Petitioner though relies on his hearing testimony to support his claim that he would have accepted the fifteen-to-seventeen-year plea offer had Ms. Lord properly advised him of his sentencing exposure if he went to trial. (*See* ECF 61 at 23 ("I would have accepted the plea agreement had I known that I was facing 57 years alone just for gun charges.")). To help analyze this claim, this Court will analyze Petitioner's credibility on this point. In assessing witness credibility, this Court is guided by several factors such as:

> (1) The opportunity and ability of the witness to see or hear or know the things about which the witness testifies;
> (2) The quality of the witness knowledge and understanding, and memory;
> (3) The witness appearance, behavior, and manner while testifying;
> (4) Whether the witness has an interest in the outcome of the case or any motive, bias, or prejudice;
> (5) Any relation the witness may have with a party in the case and any effect that the [outcome] may have on the witness;
> (6) Whether the witness said or wrote anything before [his testimony] that is different from the witness testimony in court;
> (7) Whether the witness testimony is consistent or inconsistent with other [believable] evidence ... and
> (8) Any other factors that bear on whether the witness should be believed. Inconsistencies or discrepancies in a witness testimony or between the testimony of difference witnesses may or may not cause [one] to disbelieve that witness testimony.

Third Circuit Model Crim. Jury Instructions § 1:10. After analyzing these factors and having had the ability to observe Petitioner during the evidentiary hearing, this Court finds that Petitioner fails to show to a reasonable probability that he would have accepted the government's plea offer of fifteen-to-seventeen-years imprisonment if Ms. Lord had properly explained his sentencing exposure at trial on the § 924(c) counts. Several reasons lead this Court to this conclusion.

Petitioner contradicted himself during the course of his testimony. For example, Petitioner stated in his habeas petition "[d]uring the course of criminal proceedings, the petitioner made his counsel aware that he only possible inappropriateness petitioner 'may' have been involved with was misdemeanor possession of stolen property." (ECF 1-2 at 8). However, during the evidentiary hearing, Petitioner expressly contradicted that statement by testifying he told Ms. Lord prior to trial that he was guilty of the charges. (*See* ECF 61 at 18). Such clearly contradictory statements to suit Petitioner's needs depending on the nature of the claim he is arguing have this Court questioning Petitioner's overall credibility.

Additionally, in discussing the criminal history category score ineffectiveness claim during the evidentiary hearing, Petitioner stated he was not willing to accept a timeframe of fifteen-to-seventeen years. Petitioner explained that he would have been willing to accept a *lower* time-frame because that would have allowed him to see his kids graduate high school. (*See* ECF 61 at 22). Such testimony lends further support to find Petitioner has not shown to a reasonable probability he would have accepted the fifteen-to-seventeen-year plea. Understandably, the rejection of the plea was purportedly based on Petitioner's thinking at the time he faced thirty-one-to-fifty-one-years imprisonment[2] rather than at least fifty-seven years if he went to trial.

---

[2] This Court uses thirty-one-to-fifty-one years as the purported sentencing range Petitioner thought he faced if he went to trial based on Ms. Lord's advice rather than the thirty-six-to-fifty-six years noted on Ms. Lord's handwritten contemporaneous notes as it gives Petitioner the

However, this testimony by Petitioner provides context into the mindset of Petitioner in rejecting the plea. Petitioner wanted a plea-offer shorter than fifteen-to-seventeen years so that he could be with his family sooner to see his children graduate high school based on his own testimony. These same concerns would have presumably prevented Petitioner from pleading to a fifteen-to-seventeen-year plea offer if he was facing at least fifty-seven years versus thirty-one-to fifty-one years no matter what Ms. Lord told him about his trial sentencing exposure. Under both scenarios, a fifteen-to-seventeen year sentence would be unacceptable to Petitioner because it would not allow him to see his children graduate high school, an obvious key reason to reject the plea offer as testified to by Petitioner.

For the above reasons, Petitioner failed to show to a reasonable probability that he would have taken the government's plea offer of fifteen-to-seventeen years imprisonment such that this claim of ineffective assistance of counsel is denied.

D. *Cumulative Error*

This Court previously reserved judgment on Petitioner's cumulative error claim because not all his claims had been decided. *See Baker*, 2019 WL 6888537, at \*18. Errors that do not individually warrant federal habeas relief may sometimes do so when combined. *See Albrecht v. Horn*, 485 F.3d 103, 139 (3d Cir. 2007) (footnote omitted) (citing *Marshall v. Hendricks*, 307 F.3d 36, 94 (3d Cir. 2002)). In this case, considering all of Petitioner's ineffective assistance of counsel claims and prosecutorial misconduct claims denied in this Court's previous opinion, *see Baker*, 2019 WL 688537, along with the claims denied in this opinion, this Court finds that Petitioner is not entitled to relief on a cumulative error claim. Indeed, many of Petitioner's claims do not even involve the deficient performance of Petitioner's trial counsel at all.

---

benefit of the doubt on this point and Ms. Lord could not adequately explain what the "36-56" numbers meant.

Additionally, the evidence against Petitioner in this case was strong as noted in this Court's prior opinion. This included testimony from Petitioner's co-conspirator as well as evidence corroborating certain aspects of Petitioner's co-conspirator's testimony found during a search of Petitioner's residence. *See Baker*, 2019 WL 6888537, at *1 (reciting facts against Petitioner). Collateral relief on Petitioner's cumulative error claim is therefore not warranted.

**IV.    CERTIFICATE OF APPEALABILITY**

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2255. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citation omitted). Applying this standard, this Court will deny Petitioner a certificate of appealability on the claims denied in this opinion with one exception. This Court shall grant a certificate of appealability on Petitioner's claim that trial counsel was ineffective by purportedly providing Petitioner inaccurate advice with respect to his sentencing exposure if he went to trial related to the stacking provisions of 18 U.S.C. § 924(c).

**V.     CONCLUSION**

For the reasons discussed in this opinion, Petitioner's remaining claims are denied. A certificate of appealability shall issue only on Petitioner's claim that trial counsel was ineffective by purportedly providing Petitioner inaccurate advice with respect to his sentencing exposure if

he went to trial related to the stacking provisions of 18 U.S.C. § 924(c). An appropriate order will be entered.

DATED: April 11, 2023

_____
PETER G. SHERIDAN
United States District Judge